**The HEIL CO., Plaintiff,**

v.

**HARTFORD ACCIDENT AND INDEMNITY COMPANY, and The Home Indemnity Company, Defendants.**

**No. 95–C–154.**

United States District Court,
E.D. Wisconsin.

June 20, 1996.

Joshua L. Gimbel, Douglas P. Dehler, Michael, Best & Friedrich, Milwaukee, WI, William H. Nehrkorn, II, Walther Law Offices, Milwaukee, WI, for plaintiff.

Thomas R. Schrimpf, Hinshaw & Culbertson, Milwaukee, WI, for defendant Hartford Accident.

Ronald L. Piette, Piette & Jacobson, Milwaukee, WI, for defendant Home Indemnity Co.

## DECISION AND ORDER

WARREN, District Judge.

Before the Court are cross motions for summary judgment. For the following reasons, the Court holds that the defendants did not have a duty to defend the plaintiff in an earlier patent infringement action brought by a third-party. Therefore, the plaintiff's Motion for Summary Judgment is DENIED, and the defendants' Motion for Summary Judgment is GRANTED.[1]

## I. PROCEDURAL BACKGROUND AND FINDINGS OF FACT

In this diversity action, the plaintiff, The Heil Co. (Heil), seeks to recover attorney fees and other defense costs incurred between 1990 and 1994 to defend a patent infringement suit brought by Snyder Industries, Inc. (Snyder) in the Eastern District of Wisconsin, under the caption *Snyder Industries, Inc. v. The Heil Co., et al.*, Case No. 90–C–1088. Heil claims its insurers, defendants Hartford Accident and Indemnity Company (Hartford) and The Home Indemnity Company (Home) had an obligation to defend Heil in the underlying litigation commenced by Snyder. Hartford and Home argue they had no obligation to defend Heil against the allegations of the Snyder suit. All parties have moved for summary judgment.

The lawsuit filed by Snyder against Heil alleged claims of patent infringement, a violation of Wisconsin's Organized Crime Control Act, abuse of process and tortious interference with respect to economic advantage. Hartford and Home contend that the liability policies issued to Heil did not provide coverage for the claims asserted against Heil in the Snyder litigation. The amended complaint filed by Snyder did not allege "bodily injury," "property damage," "personal injury" or "advertising injury," and therefore, defendants seek a judicial declaration that they had no duty to defend. Heil does not dispute that the Snyder amended complaint did not allege either a "bodily injury" or "property damage" as those terms are defined by the relevant policies. However, Heil argues the allegations of patent infringement triggered obligations to defend Heil for "advertising injury." Furthermore, Heil later argues that the defendant insurance companies were obligated to defend Heil because Snyder contended Heil had improperly and maliciously prosecuted a civil action in another forum for the purpose of causing injury to Snyder. Thus, Heil argues these allegations triggered the defendants' obligations to defend a claim for "malicious prosecution," one of the enumerated "personal injury" offenses covered by both defendants' insurance policies.

Therefore, the first issue before the Court is whether the Snyder allegation of "abuse of process" brought against Heil constitutes "malicious prosecution" triggering an obligation for defendants to defend under the defendants' personal injury liability policies. The second issue is whether the allegations of the Snyder litigation fall within the scope of an "advertising injury" as that term is defined by the policies issued by Hartford and Home. Or more succinctly stated, does a patent infringement lawsuit constitute an advertising injury in the instant case? Under Wisconsin law, this case presents an issue of first impression.

1. The plaintiff filed a Motion to file Surreply Brief and simultaneously filed the surreply brief with the Court. The defendant Hartford objected to plaintiff's motion to file a surreply brief. The Court hereby grants plaintiff's Motion to File Surreply Brief and incorporates plaintiff's surreply brief into the record.

The Court adopts the following findings of fact which are not in dispute. Heil is a corporation organized and existing under the laws of the State of Delaware, with offices in Chattanooga, Tennessee. (Hartford's Proposed Findings of Fact (Hartford) ¶ 1; Home's Proposed Findings of Fact (Home) ¶ 1.) Hartford is an insurance company licensed to do and doing business in Wisconsin, with its principal place of business located in Hartford, Connecticut. (Hartford ¶ 2; Home ¶ 2.) Home is an insurance company licensed to do and doing business in Wisconsin, with its principal offices located in New York, New York. (Home ¶ 3.)

Hartford issued the following liability insurance policies to Heil, each of which was in effect for the following respective time periods:

| Policy No. | Policy Period |
| --- | --- |
| 86 CLR P23003E | 11/1/81 to 11/1/82 |
| 86 CLR P23008E | 11/1/82 to 11/1/83 |
| 86 CLR P23013E | 11/1/83 to 11/1/84 |
| 86 CLR P23020E | 11/1/84 to 11/1/85 |
| 86 CLR P54303E | 11/1/85 to 2/1/86 |

(Hartford ¶ 3.) Home insured Heil under a series of comprehensive general liability insurance policies between the dates of November 1, 1986 through November 1, 1992 (Home ¶ 30):

| Policy No. | Policy Period |
| --- | --- |
| GL 1481722 | 11/1/86 to 11/1/87 |
| GL 1483261 | 11/1/87 to 11/1/88 |
| GLR 9097126 | 11/1/88 to 11/1/89 |
| GLR 9097147 | 11/1/89 to 11/1/90 |
| GLR 9097158 | 11/1/90 to 11/1/91 |
| GLR 9097170 | 11/1/91 to 11/1/92 |

(Heil's Proposed Findings of Fact (Heil) ¶ 5.)

On or about January 2, 1991, Heil was served with a summons and amended complaint for a lawsuit commenced by Snyder Industries, Inc., in the Eastern District of Wisconsin, Case No. 90–C–1008. (Heil ¶ 6; Hartford ¶ 4; Home ¶ 4.) On February 15, 1991, Heil sent Hartford a copy of the amended complaint and tendered the defense of the Snyder suit to Hartford. (Heil ¶ 7; Hartford ¶ 5; Home ¶ 28.) On January 25, 1991, Heil sent a copy of the amended complaint and tendered the defense of the Snyder suit to Home. (Heil ¶ 8.) Hartford, after reviewing the policies and the allegations of the amended complaint, disclaimed coverage and declined to defend. (Heil ¶ 9; Hartford ¶ 6.) Home did not accept Heil's tender of defense and declined coverage. (Heil ¶ 9; Home ¶ 45.) Heil successfully defended itself, and the Snyder suit was eventually dismissed with prejudice. (Heil ¶ 10; Hartford ¶ 7.)

Hartford's personal injury liability insurance coverage [2] provides:

> The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of injury (herein called *"personal injury"*) sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the *named insured's* business:
>
> Group A—false arrest, detention or imprisonment, or malicious prosecution;
>
> Group B—the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy;
>
> Group C—wrongful entry or eviction, or other invasion of the right of private occupancy;
>
> if such offense is committed during the policy period within the United States of America, its territories or possessions, or Canada, and the company shall have the right and duty to defend any suit against the *insured* seeking *damages* on account of such *personal injury* even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability

2. Although the defendants have provided the Court with the relevant portions of the comprehensive general liability coverage regarding "bodily injury" liability and "property damage" liability, the plaintiff admits and argues that only the "personal injury" and "advertising injury" portions of the insurance policies triggered the duty to defend Heil against Snyder. Therefore, the Court will focus solely on the "personal injury" and "advertising injury" portions of the insurance policies at issue.

has been exhausted by payment of judgments or settlements.

(Hartford ¶ 10.)

The advertising liability coverage included in the policy effective commencing on 11/1/85 until canceled on 2/1/86 provided:

## I. ADVERTISING INJURY LIABILITY COVERAGE

The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as damages because of *advertising injury* to which this insurance applies, caused by an *occurrence,* and the company shall have the right and duty to defend any suit against the *insured* seeking damages on account of such injury, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements:

Advertising injury is defined in the policy as follows:

*"advertising injury"* means injury arising out of one or more of the following offenses committed during the policy period in connection with the *named insured's* advertising activities:

(1) the publication or utterance of a libel or slander or of other defamatory or disparaging material or a publication or utterance in violation of an individual's right to privacy;

(2) infringement of copyright or of title or slogan; or

(3) piracy or unfair competition or idea misappropriation under an implied contract.

(Hartford ¶ 11; Heil ¶ 11.)

The Home policies define "advertising injury" similar to the Hartford policies at issue. Heil appears to concede that there is no coverage under the three policies issued by Home covering the period of November 1, 1988 through November 1, 1991. The relevant language of Home Policies GL–1 48 17 22 (11/1/86–11/1/87) and GL–1 48 32 61 (11/1/87–11/1/88) at issue defines advertising injury is as follows:

'Advertising injury' means injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition, or infringement of copyright, title or slogan.

(Home ¶ 35; Heil ¶ 12.)

Similar to the Hartford policies, the Home policies define the term "personal injury" to include claims alleging "malicious prosecution." For example, in the 86/87 and 87/88 Home policies providing personal injury coverage to Heil, the term "personal injury" was defined as follows:

'Personal injury' means injury arising out of one or more of the following offenses committed during the policy period:

1. false arrest, detention, imprisonment, or malicious prosecution;

2. wrongful entry or eviction or other invasion of the right of private occupancy;

3. a publication or utterance

 (a) of a libel or slander or other defamatory or disparaging material, or

 (b) in violation of an individual's right of privacy;

except publications or utterances in the course of or related to advertising, broadcasting publishing or telecasting activities conduct by or on behalf of the named insured shall not be deemed personal injury.

(Home ¶ 40.)

The personal injury coverage provided by the 88/89 Home policy reads as follows:

This insurance applies to 'personal injury' only if caused by an offense:

(1) Committed in the 'coverage territory' during the policy period; and

(2) arising out of the conduct of your business, excluding advertising, publishing,

broadcasting or telecasting done by or for you.

(Home ¶ 41.)

The Court opts not to provide in its Decision and Order the exact language of the other Home policies. The Court notes that all the Home policies at issue covering "personal injury" define "personal injury" to include "malicious prosecution," similar to the Hartford policies covering personal injury. (Home ¶¶ 42–44.)

## II. *LEGAL STANDARD*

Summary judgment is no longer disfavored under the Federal Rules. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) ("Summary judgment procedure is properly regarded as an integral part of the Federal Rules as a whole which are designed 'to secure the just, speedy and inexpensive determination of every action.'"). Indeed, Federal Rule of Civil Procedure 56 requires a district court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there is a *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." *Id.*

The party moving for summary judgment bears the initial burden of showing that there are no material facts in dispute and that judgment should be entered in its favor. *Hannon v. Turnage,* 892 F.2d 653, 656 (7th Cir.1990), *cert. denied,* 498 U.S. 821, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990). A defendant moving for summary judgment may satisfy this initial burden by pointing to a plaintiff's failure to introduce sufficient evidence to support each essential element of the cause of action alleged. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53. A party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials," but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Becker v. Tenenbaum–Hill Assoc., Inc.,* 914 F.2d 107, 110 (7th Cir.1990). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e).

In evaluating a motion for summary judgment, the Court must draw all inferences in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Johnson v. Pelker,* 891 F.2d 136, 138 (7th Cir.1989). "However, we are not required to draw every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991) (citations omitted.)

## III. *ANALYSIS*

 This Court's subject matter jurisdiction is premised on the diversity of parties, and it is undisputed that the coverage issue is purely a matter of state law, governed by the applicable principles of Wisconsin law. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Under Wisconsin law, the issue of insurance policy coverage is a question of law appropriate for summary judgment. *United States Fire Ins. Co. v. Good Humor Corp.,* 173 Wis.2d 804, 819, 496 N.W.2d 730, 735 (Ct.App.1993), *review denied,* —— Wis.2d ——, 501 N.W.2d 458 (1993); *Raby v. Moe,* 153 Wis.2d 101, 109, 450 N.W.2d 452, 454 (1990) (citations omitted). An insurer's obligation to defend the insured in a third-party suit is established by looking to the four corners of the complaint and determining whether the allegations in a complaint, if proven, would give rise to the possibility of recovery under the terms and conditions of the insurance policy. *School Dist. of Shore-*

*wood v. Wausau Ins. Co.*, 170 Wis.2d 347, 364, 488 N.W.2d 82, 87 (1992). The nature of the claim alleged against the insured is controlling. Generally, any doubts regarding the duty to defend, and any ambiguities contained in the insurance contract, must be resolved in favor of the insured. *Id.* However, "[t]he insurer is under an obligation to defend only if it could be held bound to indemnify the insured." *Nichols v. American Employers Ins. Co.*, 140 Wis.2d 743, 747, 412 N.W.2d 547, 549 (Ct.App.1987) (quoting *Grieb v. Citizens Casualty Co.*, 33 Wis.2d 552, 558, 148 N.W.2d 103, 106 (1967)). Thus, in the instant case, Hartford and Home had a duty to defend Heil if the Snyder suit alleged a claim seeking damages resulting from "bodily injury," "property damage," "personal injury" and/or "advertising injury" as those terms are defined in the insurance policies of the defendants. As previously noted, the issue before the Court is whether the Snyder complaint alleged a "personal injury" and/or "advertising injury."

The amended complaint filed by Snyder alleges that Snyder was the owner of United States Patent No. 4,450,976 (hereinafter "the '976 patent") entitled "Wheeled Molded Container with Hinged Lid." The amended complaint alleges that Heil, during the term of the patent, sold refuse containers which infringed the claims of the '976 patent, and that those refuse containers were manufactured by Heil Rotomold, Inc., Heil's wholly-owned subsidiary. (Snyder Amended Complaint ¶¶ 8–11.) The complaint further alleges that Snyder advised Heil of the patent infringement and that Heil continued the alleged patent infringement after receipt of Snyder's notice. (Snyder Amended Complaint ¶¶ 12–13.) Additionally, the complaint alleges that Heil sold and continued to sell replacement parts for the infringing refuse containers knowing that such replacement parts were material parts of the invention of the '976 patent not suitable for noninfringing use, constituting contributory infringement.

(Snyder Amended Complaint ¶¶ 14–15.) Heil filed an interference proceeding and later a civil interference action against Snyder which further supported Snyder's claims that Heil's infringement of the '976 patent was willful. (Snyder Amended Complaint at ¶¶ 20–32.) The amended complaint alleged causes of action for willful infringement of a patent based upon 35 U.S.C. § 271 and § 281, violation of the Wisconsin Organized Crime Control Act, Wis.Stats. § 946.83(2) and (3), abuse of process and tortious interference with prospective economic advantage. (Snyder Amended Complaint at ¶¶ 1–52.) [3]

### A. Whether defendants' personal injury liability insurance policies cover the Snyder suit obligating defendants to defend Heil.

Under Wisconsin law, "[t]o determine whether an insurer is obligated to assume the defense of a third-party suit, it is necessary to determine whether the complaint alleges facts which, if proven, would give rise to liability covered under the terms and conditions of the policy." *Sola Basic Indus., Inc. v. United States Fidelity & Guar. Co.*, 90 Wis.2d 641, 646, 280 N.W.2d 211, 213 (1979); *see also Nichols v. American Employers Ins., Co.*, 140 Wis.2d 743, 412 N.W.2d 547 (Ct.App.1987). Moreover, "[w]here the parties have contracted to limit recovery to a specific quantifiable type of remedy, a court should not alter the insurance contract to include other types of remedies not contracted for by the parties and that may not be presently quantifiable." *City of Edgerton v. General Casualty Co. of Wisconsin*, 184 Wis.2d 750, 780–81, 517 N.W.2d 463 (1994) (quoting *Shorewood School Dist.*, 170 Wis.2d at 369, 488 N.W.2d 82).

In the absence of a Wisconsin Supreme Court case on point, a federal court sitting in diversity must predict how the Wisconsin Supreme Court would decide the case. *See Adams v. Fred Weber, Inc.*, 849 F.2d 1018, 1026 (7th Cir.1988). In the ab-

---

**3.** The plaintiff argues that the Snyder amended complaint alleges that Heil had "advertised and sold" certain refuse containers and replacement parts in violation of the '976 patent issued to Snyder. The Court, having carefully reviewed the Snyder amended complaint, does not find any reference to Heil's advertising activities in the amended complaint. The Snyder amended complaint focuses entirely on the sale and manufacture of the allegedly infringing refuse container.

**1362**

sence of clear authority from Wisconsin's Supreme Court, this Court is bound to adhere to a state appellate court decision if it represents a sound or defensible prediction of how the Wisconsin Supreme Court would decide the issue. *McCoy v. Richards,* 771 F.2d 1108, 1110 (7th Cir.1985). The parties have not cited, and the Court has not found a Wisconsin Supreme Court case on point, however, recent Wisconsin Supreme Court authority on insurance law as well as Wisconsin appellate court decisions offer guidance to this Court.

In *Nichols,* a female employee filed a Title VII administrative complaint alleging sexual harassment against her employer. The administrative complaint did not reference any defamatory conduct as part of the underlying harassment, however, the investigator's initial report referenced evidence of defamatory statements by other employees and supervisors as part of the alleged harassment. The insured argued its insurer had a duty to defend because the insurance policy in question contemplated the defense of defamation actions. The court concluded that "because the nature of the claim was not a defamation action by a third party, the simple fact that a defamatory statement is part of a proceeding does not bring the case within the insurance coverage." 140 Wis.2d at 751, 412 N.W.2d at 551. In a recent Wisconsin appellate court decision, the court held that an insurance policy's coverage for advertising injury, including misappropriation of advertising ideas or style of doing business, did not include coverage for breach of contract claims. *Atlantic Mut. Ins. Co. v. Badger Medical Supply Co.,* 191 Wis.2d 229, 243, 528 N.W.2d 486, 491–92 (Ct.App.1995). The Court discussed that case law defining the terms "misappropriation" and "style of doing business" was sufficiently clear so that there was "only one reasonable construction" that did not include inducing an individual to breach a covenant not to compete and misappropriating customer information and market strategies. *Id.* at 241, 528 N.W.2d at 491.

The legal label attached to the plaintiff's (insured's) conduct is not important. The issue is whether the "conduct as alleged in the complaint is at least arguably within one

or more of the categories of wrongdoing that the policy covers." *Curtis–Universal, Inc. v. Sheboygan Emergency Medical Services,* 43 F.3d 1119, 1122 (7th Cir.1994). Thus, in the instant case, in order to determine whether the personal injury liability coverage applies and the defendants had a duty to defend Heil against the allegations of the Snyder suit, the Court must look to the amended complaint to determine whether one of the enumerated offenses covered by the insurance policy was alleged.

Hartford's and Home's personal injury liability insurance are relatively similar and provide coverage for the offenses of (1) false arrest, detention or imprisonment, or malicious prosecution; (2) the publication or utterance of a libel or slander or other defamatory or disparaging material, or a publication or utterance in violation of an individual's right to privacy; or (3) wrongful entry or eviction or other invasion of the right of private occupancy. The Snyder suit alleged claims for patent infringement, a violation of Wisconsin's Organized Crime Control Act, abuse of process and tortious interference with prospective economic advantage. Heil argues that Snyder's allegation of abuse of process is synonymous with malicious prosecution, and therefore, the abuse of process allegation triggered Hartford's and Home's duty to defend Heil. The Court disagrees.

■ The common law tort of "malicious prosecution" and "abuse of process" are separate and distinct torts. In order to maintain an action for malicious prosecution, the plaintiff must allege facts which, if proven, would satisfy each of the following six essential elements: (1) a judicial proceeding was initiated against the plaintiff; (2) the proceeding was commenced by, or at the instance of the defendant; (3) the former proceeding terminated in favor of the defendant therein, the plaintiff in the malicious prosecution action; (4) there was malice in the institution of the former proceeding; (5) there was want of probable cause for the institution of the former proceeding; and (6) the plaintiff suffered injury or damage as a result of the former proceeding. *Brownsell v. Klawitter,* 102 Wis.2d 108, 112, 306 N.W.2d 41, 43 (1981) (quotations and citations omitted).

The tort of abuse of process has two essential elements: "a willful act in the use of process not proper in the regular conduct of the proceedings and an ulterior motive." *Id.* at 114, 306 N.W.2d at 44. (quotations and citations omitted). The tort of abuse of process is more broadly defined than the tort of malicious prosecution and may provide a remedy where malicious prosecution will not. *Strid v. Converse,* 111 Wis.2d 418, 423, 331 N.W.2d 350, 353 (1983). Quite simply, under Wisconsin law, there is a difference between malicious prosecution and abuse of process.[4]

█ It is clear to the Court that under Wisconsin law, malicious prosecution and abuse of process are separate and distinct torts. The Snyder amended complaint alleged a cause of action for abuse of process which is not enumerated as a covered offense in either of defendants' personal injury policies, and is defined differently by the Wisconsin Supreme Court than the covered offense of malicious prosecution. In light of recent Wisconsin Supreme Court authority as well as Wisconsin appellate court decisions, the Court concludes that none of the enumerated offenses covered by the insurance policies are alleged in the Snyder suit. Under Wisconsin law, the offense of "malicious prosecution" is not ambiguous and only a lawsuit against the insured for malicious prosecution would create an obligation to defend. The Snyder amended complaint does not set forth a claim for malicious prosecution, in particular, the Snyder lawsuit fails to allege that the complained of proceedings terminated in favor of defendant, who then became the plaintiff in the subsequent malicious prosecution action. Thus, at the very

least, the third element of a claim for malicious prosecution is absent. Therefore, because the Snyder amended complaint did not allege a cause of action for malicious prosecution or any other covered personal injury, Hartford and Home did not have a duty to defend Heil under the insurance policies covering personal injury.

**B. Whether defendants' advertising injury liability insurance policies cover the Snyder suit obligating defendants to defend Heil.**

Heil argues the defendants had an obligation to defend Heil in the Snyder suit under the terms of the insurance policies covering an advertising injury. The defendants' policies covering advertising injury liability are similar. In order for coverage to apply, the underlying complaint must allege: (1) an offense committed in connection with the insured's advertising activities AND (2) one of the enumerated offenses within the definition of advertising injury. The issue before the Court is whether "piracy" or "unfair competition" constitute patent infringement and whether the alleged patent infringement is committed in connection with Heil's advertising activities.

The parties have not cited and the Court has not found a Wisconsin Supreme Court case discussing whether a policy providing coverage for piracy or unfair competition occurring in the course of the insured's advertising activities should be construed to cover patent infringement. Hartford and Home argue that the Snyder complaint does not allege an offense committed in connection

4. In support of its argument that malicious prosecution and abuse of process are the same, Heil relies on *Koehring Co. v. American Mutual Liability Ins. Co.,* 564 F.Supp. 303 (E.D.Wis.1983). The Court agrees with defendant Hartford that recent Wisconsin Supreme Court and appellate court decisions have implicitly rejected the rationale utilized in *Koehring;* and the facts are distinguishable, for example, the underlying lawsuit in *Koehring* alleged an explicit claim for malicious prosecution, which was a covered offense. In the instant case, the Snyder amended complaint did not plead facts alleging a cause of action for malicious prosecution or claim malicious prosecution as a cause of action against Heil. Instead, Snyder alleged a cause of action for abuse of process which Wisconsin courts

have recognized is a broader cause of action than malicious prosecution, as well as a separate and distinct tort. *See Strid v. Converse,* 111 Wis.2d 418, 426, 331 N.W.2d 350, 355 (1983); *see also R.A. Hanson Co., Inc. v. Aetna Ins. Co.,* 26 Wash. App. 290, 612 P.2d 456 (1980) (noting a clear distinction in Washington law between abuse of process and malicious prosecution, and consequently, insurance coverage for malicious prosecution does not cover abuse of process); *Parker Supply Co., Inc. v. Travelers Indemnity Co.,* 588 F.2d 180 (5th Cir.1979) (recognizing the difference between actions for malicious prosecution and abuse of process in Alabama, and consequently, only a suit against the insured for the covered offense of malicious prosecution would create an obligation to defend).

1364

with Heil's advertising activities and cite persuasive authority. The Court having reviewed the persuasive authority cited by both plaintiff and defendants notes that the majority of cases outside of Wisconsin consistently hold that patent infringement does not constitute "piracy" within the meaning of a liability policy's advertising injury coverage.[5] *See Iolab Corp. v. Seaboard Surety Co.*, 15 F.3d 1500 (9th Cir.1994); *Intex Plastics Sales Co. v. United Nat'l Ins. Co.*, 23 F.3d 254 (9th Cir.1994); *Everest and Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226 (9th Cir.1994); *Owens–Brockway Glass Container, Inc. v. International Ins. Co.*, 884 F.Supp. 363 (E.D.Cal.1995); *Gencor Indus., Inc. v. Wausau Underwriters Ins. Co.*, 857 F.Supp. 1560 (M.D.Fla.1994); *Davila v. Arlasky*, 857 F.Supp. 1258 (N.D.Ill.1994); *I.C.D. Indus., Inc. v. Federal Ins. Co.*, 879 F.Supp. 480 (E.D.Pa.1995); *Atlantic Mut. Ins. Co. v. Brotech Corp.*, 857 F.Supp. 423 (E.D.Pa.1994); *Gitano Group, Inc. v. The Kemper Group, et al.*, 26 Cal.App.4th 49, 31 Cal.Rptr.2d 271 (1994); *Aetna Casualty & Surety Co. v. Superior Court*, 19 Cal.App.4th 320, 23 Cal.Rptr.2d 442 (1993); *A. Meyers & Sons Corp. v. Zurich American Ins. Group*, 74 N.Y.2d 298, 545 N.E.2d 1206, 546 N.Y.S.2d 818 (1989).

In *National Union Fire Ins. Co. of Pittsburgh v. Siliconix, Inc.*, 729 F.Supp. 77 (N.D.Cal.1989), the insured was charged with patent infringement and sought coverage from its insurance company under its policy offering coverage for "advertising injury." The coverage grant and definition of adver-

tising injury were similar to the language and definition found in Hartford's and Home's policies. First, the court concluded that the term "piracy," one of the enumerated offenses in the policy, encompassed patent infringement. The court discussed that because "piracy," read in its ordinary sense, can include patent infringement, the court was obligated to construe the term in favor of coverage for the insured. 729 F.Supp. at 79. The Court next resolved the question of whether injury arising out of patent infringement "occurs in the course of" advertising activities. The insured argued that advertising is "part and parcel of selling, and therefore the selling of an infringing product is an infringement occurring in the course of advertising." *Id.* Although the court found the argument "facially appealing," the court rejected the argument as too broad by "read[ing] the requirement that the infringement occur in the course of advertising out of the policy." *Id.* at 80. The court noted that this argument, if taken to the extreme, would allow any harmful act, if it were advertised, to fall under the grant of coverage. In particular, the court opined, "[u]nder this rationale, ... injury due to a defective product which is sold as a result of advertising activity and which later harms a consumer, may fall within with the coverage grant." *Id.* In order to give meaning to each clause of the policy, the Northern District of California concluded that even if piracy is construed to encompass patent infringement, patent infringement does not occur in the course of advertising, and is not covered as a type of advertising injury. *Id.* at 80. Since *Silico-*

5. The plaintiff cites to three cases concluding that allegations of patent infringement were covered as "piracy" within the meaning of "advertising injury." *Union Ins. Co. v. Land and Sky, Inc.*, 247 Neb. 696, 529 N.W.2d 773 (1995); *Rymal v. Woodcock*, 896 F.Supp. 637 (W.D.La. 1995); *John Deere Ins. Co. v. Shamrock Ind., Inc.*, 696 F.Supp. 434 (D.Minn.1988), *aff'd*, 929 F.2d 413 (8th Cir.1991). In *Union Ins.*, the underlying complaint alleged potential liability for inducing or contributing to patent infringement due to the advertising activities of the insured. Thus the advertising activities of the insured were implicated by the underlying complaint. Moreover, the insured had entered into two insurance contracts with the insurer, one of the contracts explicitly excluded patent infringement

and the other policy created an ambiguity which must be construed in favor of coverage, in addition to the allegation of injury resulting from the insured's advertising activity. 247 Neb. at 704, 529 N.W.2d at 778. In *John Deere*, the court held that the alleged claims of misappropriation of trade secrets fell within the coverage, and therefore, the insurer had an obligation to defend the entire lawsuit including the patent infringement claims. As the defendant Hartford correctly notes there was no finding by the court held that patent infringement claims specifically were covered. 696 F.Supp. at 440. Thus, the Court finds that the cases cited by plaintiff are clearly in the minority, and moreover, the Court finds two of the cases distinguishable.

*nix,*[6] the United States Court of Appeals for the Ninth Circuit has held that, as a matter of law, patent infringement cannot occur in the course of an insured's advertising activities. *See, e.g., Iolab,* 15 F.3d at 1505 (holding that an infringement claim based on the manufacture and sale of patented lens did not arise out of the insured's advertising activities); *Everest and Jennings,* 23 F.3d at 229 (holding that patent infringement is not caused by conduct committed in the course of advertising).

While a Wisconsin court has not addressed this issue, the virtually unanimous trend of courts outside Wisconsin is to rule against coverage. Although this Court must attempt to predict how the Wisconsin Supreme Court would decide the case, in doing so, the Court may consider the well-reasoned decisions of other jurisdictions as persuasive. The Court agrees with the much of the reasoning of *Siliconix* and *Iolab.* Under the clear language of the policies issued to Heil by Hartford and Home, coverage is provided for "advertising injury" only if the alleged injury was committed by Heil in the course of advertising their goods, products or services. In order to interpret the language of the insurance policy in context with the policy's intended function, any of the policy's enumerated advertising injuries must be caused by Heil's advertising.

First, the word "patent" or "patent infringement" is not listed in the policies' language defining advertising injury. The language defining "advertising injury" includes specific terms connected to well known legal categories, for example, "libel," "slander," and "infringement of copyright." It is significant that "patent" is not mentioned anywhere, and in fact, is entirely absent from the policy language. The Court opines that if coverage for patent infringement was anticipated, patent infringement would be explicitly listed similar to "infringement of copyright." As the court discussed in *Gencor:*

> it is nonsense to suppose that if the parties had intended the insurance policy in question to cover patent infringement claims, the policy would explicitly cover infringements of "copyright, title or slogan," but then include patent infringement, sub silentio, in a different provision.... Basic common sense dictates that if these policies covered any form of patent infringement, the word "patent" would appear in the quoted "infringement" clauses.

857 F.Supp. at 1564. Nonetheless, Heil consults a number of dictionaries to find that the word "piracy" can refer to patent infringement, and cites to Wisconsin insurance law that any ambiguity must be resolved in favor of the insured. However, this argument fails to read the term "piracy" within the context of the insurance

---

6. In *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992), the California Supreme Court discussed at length the requirement that advertising have proximately caused the damages in order to be covered under the advertising injury provisions of an insurance policy. The court noted that other courts which had examined the question had "rejected coverage claims based on injuries that did not have a causal connection with the insured's advertising activities." 2 Cal.4th at 1274, 10 Cal.Rptr.2d at 551, 833 P.2d at 558. The California Supreme Court quoting the *Siliconix* decision explained that a causal connection was necessary to invoke coverage. The court explained:

> as a matter of common sense, an objectively reasonable insured would not expect "advertising injury" coverage to extend as far as the Bank argues it should extend. Virtually every business that sells a product or service advertises, if only in the sense of making representations to potential customers. If no causal rela-

tionship were required between "advertising activities" and "advertising injuries," then "advertising injury" coverage, alone, would encompass most claims related to the insured's business. However, insureds generally expect to obtain such broad coverage, if at all, only by purchasing several forms of insurance, including coverage for "error and omissions liability," "directors and officers liability," "completed operations and products liability," and/or other coverages available as part of CGL policy.... For these reasons, we hold that "advertising injury" must have a causal connection with the insured's "advertising activities" before there can be coverage.

2 Cal.4th at 1276–77, 10 Cal.Rptr.2d at 553, 833 P.2d at 560 (footnote omitted). However, in *Bank of the West,* the California Supreme Court appears to leave open the possibility that in some cases, a patent infringement claim may be "based on ... the advertisement." 2 Cal.4th at 1275, 10 Cal.Rptr.2d at 551, 833 P.2d at 558.

policies at issue. The insurance policies at issue use the term "piracy" within the definition of "advertising injury," thus the issue is not what the term "piracy" means in isolation but what "piracy" occurring in the course of advertising activities could reasonably mean. *See Brotech*, 857 F.Supp. at 428. The Court agrees with the reasoning in *Brotech* and *Iolab*, and concludes that "piracy," when read in the context of "advertising injury," and in light of common sense, does not refer to direct patent infringement, contributory patent infringement or inducement of patent infringement. "In the context of policies written to protect against claims of advertising injury, 'piracy' means misappropriation or plagiarism found in the elements of the advertisement itself—in its text form, logo, or pictures—rather than in the product being advertised." *Iolab*, 15 F.3d at 1506. Heil's claim of piracy arising out of advertising has no basis because the Snyder complaint was based on Heil's alleged infringement of Snyder's patent for the hinged lid itself rather than on Heil's advertising of the lid. There is nothing about the term "advertising injury" which remotely suggests coverage of patent infringement. A reasonable insured would read the insurance policy as defining "advertising injury" in a conventional sense. In the instant case, Heil attempts to expand the scope of coverage to patent infringement not normally related to advertising. Moreover, Heil's reliance on an advertisement for the Heil refuse container attached to the Snyder amended complaint is misplaced. The advertisement, referred to in the pleadings as Exhibit D, does not provide notice to Heil that it was stating a claim for induced infringement arising from Heil's advertising, but rather serves solely to provide a picture of the alleged infringing product being sold by Heil.

■ Under 35 U.S.C. § 271(a), the statutory definition of direct patent infringement refers only to the making, using or selling a patented invention. Thus the gravamen of direct infringement of a patent is making, using or selling a patented invention not advertising it. In a patent infringement case, the owner of a patent (the patentee) is injured when an infringer, without consent of the patentee, uses or sells a product utilizing the patentee's patented invention, the injury is not incurred when the product incorporating the patented invention is advertised. Nonetheless, Heil argues that because Snyder brought its allegations of patent infringement under 35 U.S.C. § 271 and did not designate which section of the statute it invoked, the amended complaint involves claims of contributory and inducing infringement under 35 U.S.C. § 271(b) and (c). As previously stated, the duty of a liability insurer to defend an action brought against an insured is determined by the allegations in the complaint. Accordingly, the Court's duty is to compare the allegations of the complaint to the terms of the policy to determine whether a duty to defend exists. Although it is correct that Snyder did not specify by statutory section the basis of its patent infringement lawsuit, the allegations of the amended complaint allege direct infringement pursuant to 35 U.S.C. § 271(a) for selling and manufacturing an alleging infringing product and contributory infringement pursuant to 35 U.S.C. § 271(c) for selling replacement parts not suitable for substantial noninfringing use. (Snyder Amended Complaint ¶¶ 11–15.) The Snyder amended complaint did not allege a claim for induced infringement. The advertisement, attached to the Snyder amended complaint, appears to have been submitted solely as evidence that Heil was selling the infringing product. In conclusion, the Snyder amended complaint arose out of the illegal selling of a alleged infringing product in violation of patent '976, not out of Heil's advertising activities.

■ Therefore, Heil has failed to demonstrate how the patent infringement in this case could have been caused by advertising activity, or that it arose out of advertising activity. Instead, the Snyder amended complaint alleges that the infringement was caused by the and sale and manufacture of an allegedly infringing product. In fact, advertising activity is not mentioned in the Snyder amended complaint. Thus, Heil has failed to establish any causal connection between the patent infringement alleged in the Snyder litigation and any advertising activi-

ty, despite the fact that the infringing product was advertised and may have been sold, in part, through advertising.

Heil further claims that the charge of "unfair competition" in the Snyder complaint requires Hartford and Home to provide a defense under the "advertising injury" provisions of the policies. Coverage for "unfair competition" is included within the insurance policies' definition of "advertising injury." However the Snyder amended complaint contains no allegation of "unfair competition" on its face. Heil contends that this is not fatal to its position because the claim for unfair competition can be discerned by reviewing the allegations of the complaint. Like the claim for coverage based on piracy, the allegation of unfair competition must also emanate from Heil's advertising activities. *See Davila,* 857 F.Supp. at 1261–63 (rejecting argument that "unfair competition" included an action for patent infringement due to the lack of causal relationship between the patent infringement suit and the insured's advertising activities).

█ Common law unfair competition is generally thought to be synonymous with the act of "passing off" one's goods as those of another, such as the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market. *Bank of the West,* 2 Cal.4th at 1263, 10 Cal.Rptr.2d at 544, 833 P.2d at 551. An examination of the twenty-one page amended complaint indicates that it alleges injury arising out of the manufacture and sale of a Heil refuse container which is alleged to infringe Snyder's patent. It is clear to the Court that the Hartford and Home policies, when read in context, do not cover the act of "unfair competition" arising out of the alleged illegal manufacturing and sale of goods in violation of another's patent rights and the activity Snyder complains of is not one covered under the Hartford and Home policies. *See Gencor,* 857 F.Supp. at 1566; *Brotech,* 857 F.Supp. at 428–29; *I.C.D. Industries,* 879 F.Supp. at 487.

█ Under the "advertising injury" language of the policies at issue, a claim due to injury from libel, slander, defamation, violation of an individual's right to privacy, infringement of copyright or of title or slogan, piracy, unfair competition, or idea misappropriation must also arise out of an offense occurring in the course of Heil's advertising activities. These are the types of injury an insured can expect to occur in the course of its advertising activity, and therefore, can reasonably expect to be covered by a policy insuring against advertising injury. Thus, to have triggered Hartford and Home's duty to defend, the claimed injury must have both arisen out of an offense occurring in the course of the insured's "advertising activities" and constitute one of the enumerated offenses. In conclusion, the Court agrees with the majority of courts which have considered the issue that patent infringement is not an advertising injury and does not give rise to advertising liability under the policies here involved. The Court will not adopt a strained interpretation of the insurance policies in order to create an ambiguity where none exists. Finally, because the Court concludes that the insurance policies at issue did not cover the allegations of the Snyder amended complaint, the Court opts not to address the defendants' arguments invoking the "known loss" doctrine.

## IV. CONCLUSION

Based on the foregoing discussion, the Court holds that defendants, Hartford Accident and Indemnity Company and The Home Indemnity Company, had no duty to defend plaintiff, The Heil Company, in the patent infringement suit brought by Snyder Industries, Inc.

**IT IS THEREFORE ORDERED** that the plaintiff's Motion for Summary Judgment is **DENIED,** the defendants' Motion for Summary Judgment is **GRANTED,** and this case is **DISMISSED** in its entirety.

**SO ORDERED.**