**Certiorari Granted, July 26, 2013, No. 34,232**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-084**

**Filing Date: June 3, 2013**

**Docket No. 31,707**

**GENE E. HINKLE, HINKLE INCOME PROPERTIES, LLC, a New Mexico Limited Liability Company, and BETTY HINKLE,**

      **Plaintiffs-Appellants,**

**v.**

**STATE FARM FIRE & CASUALTY COMPANY,**

      **Defendant-Appellee,**

**and**

**COLORADO CASUALTY, DEREK SANCHEZ, and FIREMAN'S FUND INSURANCE COMPANY,**

      **Defendants.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Carl J. Butkus, District Judge**

Will Ferguson & Associates
David M. Houliston
Brian Judson
Albuquerque, NM

for Appellants

Guebert Bruckner P.C.
Terry R. Guebert

1

Christopher J. DeLara
Albuquerque, NM

for Appellee

## OPINION

**WECHSLER, Judge.**

**{1}**    In this case, we consider whether the district court erred in granting summary judgment in favor of an insurer in an action alleging that the insurer breached its duty to defend the insured in a third-party suit.  The policy at issue included a duty to defend lawsuits arising out of the offenses of abuse of process or malicious prosecution.  We conclude that the third-party complaint did not expressly make a claim for the formerly recognized torts of abuse of process or malicious prosecution, or the currently recognized combination of the two torts, malicious abuse of process, and that the underlying facts forming the basis of the third-party complaint were insufficient to state a claim for malicious abuse of process.  We also conclude that the policy did not create a reasonable expectation that the insurer had a duty to defend.  We affirm.

## BACKGROUND

**{2}**    Plaintiffs Hinkle Income Properties, LLC, Gene E. Hinkle (Hinkle), and Betty Hinkle filed this action against Defendants State Farm Fire and Casualty Company (State Farm); Derek Sanchez, a State Farm insurance adjuster; Colorado Casualty; and Fireman's Fund Insurance Company for Defendants' failure to defend Plaintiffs in an underlying action filed in state district court.  In its complaint, Plaintiffs alleged violations for breach of contract, negligence, specific performance, bad faith, and violations of the New Mexico Unfair Practices Act, NMSA 1978, §§ 57-12-1 to -22 (1967, as amended through 2009).

**{3}**    State Farm filed a motion for summary judgment on March 31, 2011, arguing that it had no duty to defend or provide liability coverage to Hinkle under either of two insurance policies that it had issued to Hinkle and Betty Hinkle.  The remaining Defendants filed for summary judgment on November 12, 2010.  On September 16, 2011, the district court granted summary judgment in favor of State Farm against all Plaintiffs.  The district court granted summary judgment in favor of the remainder of Defendants on October 14, 2011 and on July 9, 2012.  Plaintiffs filed a notice of appeal regarding the grant of summary judgment in favor of State Farm.

**{4}**    Plaintiffs' complaint in this case against State Farm arose out of State Farm's failure to defend Plaintiffs in a lawsuit filed by Peterson Inv-Juan Tabo, LLC (Peterson).  On November 20, 2008, Peterson filed a complaint (the Peterson complaint) against Plaintiffs, as well as the Betty L. Hinkle Revocable Trust, Kenneth Hunt, and Hunt and Davis, P.C. (the Peterson litigation).  The Peterson litigation arose out of a dispute over the development of

2

commercial property owned by Plaintiffs. The Peterson complaint asserted claims for economic duress, breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, prima facie tort, civil conspiracy, and punitive damages. It alleged that Peterson and Plaintiffs entered into an agreement in which Peterson leased the property from Plaintiffs. Peterson was to develop the property into a drug store and lease the building to Walgreens. The Peterson complaint alleged that after entering into the agreement, Hinkle used his superior bargaining power to coerce Peterson to provide additional improvements and concessions not covered by the original agreement.

**{5}** At the time the Peterson litigation commenced, State Farm insured Hinkle and Betty Hinkle under two policies. In the complaint in this action, Plaintiffs contended that State Farm had a duty to defend and to provide liability insurance under the terms of both policies. One policy, entitled a "Personal Liability Umbrella Policy," provided liability insurance and a duty to defend the insured against enumerated classes of claims, including "the commission of an offense which first results in personal injury during the policy period." The "Personal Liability Umbrella Policy" defined "personal injury" as "injury other than bodily injury arising out of one or more of the following offenses:

a. false arrest, false imprisonment, wrongful eviction, wrongful detention of a person;

b. abuse of process, malicious prosecution;

c. libel, slander, defamation of character[;] or

d. invasion of a person's right to private occupancy by physically entering into that person's personal residence."

The other policy was a "Homeowners Policy," which Plaintiffs do not appear to address on appeal. We therefore only discuss the "Personal Liability Umbrella Policy" (the Policy).

**{6}** State Farm filed for summary judgment, arguing that it had no duty to defend or provide liability insurance under the Policy. In their response, Plaintiffs argued that the underlying motivation for the Peterson litigation was that Hinkle threatened to use judicial proceedings against Peterson in order to coerce favorable business terms. Plaintiffs asserted that State Farm merely performed a "four corners" examination of the Peterson complaint and determined that there was no duty to defend. According to Plaintiffs, a reasonable investigation would have uncovered underlying facts and triggered a duty to defend under the Policy provision providing coverage for abuse of process and malicious prosecution. The district court assumed that an investigation by State Farm would have revealed that Hinkle threatened Peterson with litigation. Nevertheless, the district court held that summary judgment was proper because the mere threat of litigation does not amount to abuse of process or malicious prosecution under New Mexico law or as the term is ordinarily understood.

3

**{7}** On appeal, Plaintiffs argue that the district court erred in granting summary judgment because they presented sufficient evidence to establish material issues of fact that (1) State Farm denied coverage based on a facial review of the complaint and that an investigation would have revealed a duty to defend Hinkle under the scope of the Policy, and (2) Hinkle had a reasonable expectation that a defense would be provided by State Farm. The arguments on appeal address the scope of the Policy based on the underlying facts of the Peterson Litigation only as applied to Hinkle.

## STANDARD OF REVIEW

**{8}** "An appeal from the grant of a motion for summary judgment presents a question of law and is reviewed de novo." *Montgomery v. Lomos Altos, Inc.*, 2007-NMSC-002, ¶ 16, 141 N.M. 21, 150 P.3d 971. Generally, "[s]ummary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. In determining whether an issue of material fact exists, we review the whole record in the light most favorable to the party opposing summary judgment. *Yurcic v. City of Gallup*, 2013-NMCA-039, ¶ 5, 298 P.3d 500. "However, if no material issues of fact are in dispute and an appeal presents only a question of law, we . . . are not required to view the appeal in the light most favorable to the party opposing summary judgment." *Id.* (internal quotation marks and citation omitted).

## DUTY TO DEFEND

**{9}** Plaintiffs first argue that State Farm had a duty to defend Hinkle under the Policy because a reasonable investigation would have revealed that the underlying facts of the Peterson litigation were that Hinkle threatened Peterson with litigation in order to coerce favorable business terms. Plaintiffs contend that during "the Peterson litigation, the depositions of the Peterson [p]laintiffs were taken and [that t]he Peterson [p]laintiffs claimed [Hinkle] threatened to use the litigation process in order to obtain an economic and business advantage" over Peterson. Plaintiffs further contend that, had State Farm conducted a reasonable investigation as obligated under New Mexico law, it would have found the depositions, and it would have had sufficient information to trigger the duty to defend Hinkle because the Peterson litigation was premised on abuse of process or malicious prosecution.

**{10}** We begin with a brief discussion of an insurer's duty to investigate and defend against a third-party claim against its insured. In *G & G Services, Inc. v. Agora Syndicate, Inc.*, 2000-NMCA-003, ¶ 1, 128 N.M. 434, 993 P.2d 751, this Court "examine[d] the parameters of an insurer's duty to investigate and defend a third-party claim filed against its insured[.]" We stated that under well-established New Mexico law "facts other than those set forth in the complaint may also implicate an insurer's duty to defend." *Id.* ¶ 21. Thus, the "duty of an insurer to defend arises from the allegations on the face of the complaint or from the known but unpleaded factual basis of the claim that brings it arguably within the scope of coverage." *Id.* (emphasis, internal quotation marks, and citation omitted). Turning

4

to the "amount of investigation an insurer is required to undertake when presented with a demand by an insured to provide a defense," we held that "an insurance company is required to conduct such an investigation into the facts and circumstances underlying the complaint against its insured as is reasonable given the factual information provided by the insured or provided by the circumstances surrounding the claim in order to determine whether it has a duty to defend." *Id.* ¶¶ 22-23. Our holding was based on the rationale that "[a]n insurance company cannot construct a formal fortress of the third party's pleadings and retreat behind its walls. The pleadings are malleable, changeable[,] and amendable. In light of the plasticity of modern pleading, we should hardly designate the third party as the arbiter of the policy's coverage." *Id.* ¶ 27 (alterations, internal quotation marks, and citation omitted).

**{11}** The district court assumed, and the parties do not dispute, that a reasonable investigation would have revealed the underlying facts that the Peterson litigation was based on Hinkle's threat of litigation to Peterson for a business advantage. The dispute in this case centers on whether these underlying facts triggered the duty of State Farm to defend Hinkle under the Policy provision for abuse of process or malicious prosecution.

**{12}** Originally, the torts of abuse of process and malicious prosecution were two distinct, but closely related, torts in New Mexico. *See DeVaney v. Thriftway Mktg. Corp.*, 1998-NMSC-001, ¶ 13, 124 N.M. 512, 953 P.2d 277, *overruled on other grounds by Durham v. Guest*, 2009-NMSC-007, 145 N.M. 694, 204 P.3d 19. "Both torts [were] designed to offer redress to a plaintiff who has been made the subject of legal process improperly, where the action was wrongfully brought by a defendant merely for the purpose of vexing or injuring the plaintiff, and resulting in damage to his or her personal rights." *DeVaney*, 1998-NMSC-001, ¶ 14.

**{13}** In *DeVaney*, based on the similarities of the torts and developments of law that blurred the distinction between them, our Supreme Court combined abuse of process and malicious prosecution into a single cause of action called malicious abuse of process. *Id.* ¶¶ 13-17. The elements for a malicious abuse of process claim are "(1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages." *Id.* ¶ 17.

**{14}** Our Supreme Court subsequently clarified the elements for malicious abuse of process in *Durham*. In *Durham*, the Court overruled *DeVaney* to the extent that *DeVaney* required that the defendant initiate a judicial proceeding against the plaintiff. *Durham*, 2009-NMSC-007, ¶ 29. Consequently, the elements of malicious abuse of process now are "(1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages." *Id.* Applying these elements, the *Durham* Court reversed the district court's grant of a motion to dismiss for failure to state a claim when the plaintiff alleged that the defendant maliciously issued subpoenas for an illegitimate

5

purpose during arbitration proceedings not initiated by the defendant. *Id.* ¶¶ 5, 37.

**{15}** Applying the elements of malicious abuse of process as stated in *Durham*, we conclude that the district court did not err in holding that State Farm did not have a duty to defend Hinkle under the Policy and in granting summary judgment in favor of State Farm. The Peterson complaint does not assert a claim for malicious abuse of process, or even the formerly recognized torts of abuse of process or malicious prosecution. It only asserts claims for economic duress, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, prima facie tort, civil conspiracy, and punitive damages. Plaintiffs do not argue that any of Peterson's stated claims were covered under the Policy.

**{16}** Even assuming, as the district court did, that a reasonable investigation into the underlying facts of the Peterson complaint would have revealed that the basis of the Peterson litigation was Hinkle's threat of litigation to Peterson in order to obtain an economic and business advantage over Peterson, these facts are insufficient to state a claim for malicious abuse of process. Under New Mexico law, malicious abuse of process requires "the use of process *in a judicial proceeding* that would be improper in the regular prosecution or defense of a claim or charge[.]" *Id.* ¶ 29 (emphasis added). Although *Durham* modified malicious abuse of process to remove the requirement that the defendant initiate judicial proceedings against the plaintiff, malicious abuse of process still requires the improper use of process within a judicial proceeding. *See id.* A threat of litigation for an improper purpose, without more, is insufficient to satisfy the first element as stated in *Durham. See State v. Rendelman*, 947 A.2d 546, 556 n.9 (Md. 2008) (stating that "the mere threat of the initiation of meritless or frivolous litigation would not rise to the level of [abuse of process or malicious use of process]. Rather these civil consequences require the *actual* pursuit of litigation to be applicable" under Maryland law); *see also Regency Motors of Metairie, L.L.C. v. Hibernia-Rosenthal Ins. Agency, L.L.C.*, 868 So. 2d 905, 909 (La. Ct. App. 2004) (stating that threatened legal action was not sufficient to establish malicious prosecution and therefore affirming summary judgment in favor of an insurer for breach of contract for failure to defend the insured); *Lafferty v. Rhudy*, 878 S.W.2d 833, 836 (Mo. Ct. App. 1994) ("[The plaintiff's] petition does not properly plead a claim for abuse of process because it merely alleges that [the defendant] *threatened* to file an ethics complaint against [the plaintiff], not that he ever actually filed such a complaint and pursued it with the improper purpose of extorting payment from [the defendant].").

**REASONABLE EXPECTATION DOCTRINE**

**{17}** Plaintiffs next argue that the district court erred in granting summary judgment because a material fact exists as to whether Hinkle had a reasonable expectation that the Policy required State Farm to defend Hinkle in the Peterson litigation. Plaintiffs argue that (1) the terms "abuse of process" and "malicious prosecution" are ambiguous to a non-lawyer or someone not trained in the insurance field; and (2) as a result of the combination of abuse of process and malicious prosecution into one cause of action called malicious abuse of process, the terms "abuse of process" and "malicious prosecution" are ambiguous because

6

they "cease[] to hold meaning in New Mexico [c]ourts."

**{18}** "[I]nsurance contracts are construed by the same principles which govern the interpretation of all contracts." *Dairyland Ins. Co. v. Herman*, 1998-NMSC-005, ¶ 12, 124 N.M. 624, 954 P.2d 56 (internal quotation marks and citation omitted). Our Supreme Court has held that the doctrine of reasonable expectations applies if the language of an insurance policy would lead the insured to reasonably expect coverage. *Barth v. Coleman*, 118 N.M. 1, 5, 878 P.2d 319, 323 (1994). The doctrine of reasonable expectations also applies when the language of a policy is ambiguous. *See Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶ 22, 123 N.M. 752, 945 P.2d 970; *see also Sanchez v. Herrera*, 109 N.M. 155, 159, 783 P.2d 465, 469 (1989) (stating that the doctrine of reasonable expectations applies if the policy creates an ambiguity or the insured has a reasonable expectation of coverage). Under the doctrine of reasonable expectations, "we refer to what the hypothetical reasonable insured would glean from the wording of the policy and the kind of insurance at issue[.]" *Rodriguez v. Windsor Ins. Co.*, 118 N.M. 127, 130, 879 P.2d 759, 762 (1994), *modified on other grounds by Montano v. Allstate Indem. Co.*, 2004-NMSC-020, 135 N.M. 681, 92 P.3d 1255.

**{19}** Turning to the language of the Policy, the definition of "personal injury" is defined and limited to specific legal causes of action. The Policy states that its coverage is limited to injury "arising out of one or more of the following *offenses*" and then proceeds to list specific causes of action. In this context, Hinkle, as the policyholder, could not have reasonably expected a defense to be provided for a suit based on a cause of action not enumerated under the Policy. *See id.* (stating that an insured's reasonable expectations are based on the combination and wording and type of policy at issue). An average, reasonably intelligent consumer would read the Policy as covering only the specific "offenses" contained in the definitions of "personal injury," and the Peterson complaint did not make a claim for the formerly recognized torts of abuse of process or malicious prosecution or the current combination of the two torts, malicious abuse of process. Under these circumstances, the district court did not err by determining that the Policy was unambiguous or that it did not provide a reasonable expectation that State Farm had a duty to defend based on the Peterson complaint. *See Rummel*, 1997-NMSC-041, ¶ 19 (stating that ambiguities arise when sections of a policy appear to conflict, are susceptible to more than one meaning, when the structure is illogical, or when a matter of coverage is not explicitly addressed by the policy).

**{20}** Plaintiffs also argue that our Supreme Court's consolidation of abuse of process and malicious prosecution into a single tort, malicious abuse of process, renders the Policy ambiguous because the Policy uses the former names of abuse of process and malicious prosecution. Therefore, Plaintiffs contend that we must construe the Policy against State Farm. However, we disagree that the Policy is ambiguous as applied to the facts of this case.

**{21}** As we have discussed, the Peterson complaint made no express claim for abuse of process, malicious prosecution, or malicious abuse of process. Nor did the facts underlying

7

the Peterson complaint state a claim for malicious abuse of process. The complaint therefore is insufficient to state a claim for the previously recognized torts of abuse of process and malicious prosecution. As a result, although the Policy may refer to the outdated names of abuse of process and malicious prosecution, under the Peterson complaint and the underlying facts forming the basis of the Peterson complaint, there is no ambiguity in the language as to the scope of coverage as applied to the facts of this case. *See Barth*, 118 N.M. at 5, 878 P.2d at 323 (stating that a "lay person's expectations of insurance coverage are of course formed by many factors besides the language of the policies themselves" (internal quotation marks and citation omitted)).

{22}    We note that Plaintiffs direct us to two cases in which a court has held that coverage for malicious prosecution is ambiguous and must be construed against the insurer. In *Lunsford v. American Guarantee & Liability Insurance Co.*, 18 F.3d 653, 654-55 (9th Cir. 1994), the Ninth Circuit applied California law and concluded that malicious prosecution was ambiguous because a lay person's understanding of the term would be different from the legal definition of the term. Resolving the ambiguity in favor of the insured, the Ninth Circuit held that malicious prosecution as used in an insurance policy was broad enough to encompass the related tort of abuse of process. *Id.* at 655-56. The court in *St. Paul Fire & Marine Insurance Co. v. Tingley Systems, Inc.*, 722 So. 2d 849, 849 (Fla. Dist. Ct. App. 1998), relied on *Lunsford* to reach the same conclusion. However, *Lunsford* appears to state a minority position, and the majority of courts have reached the opposite conclusion. *See*, *e.g.*, *Parker Supply Co., Inc. v. Traveler*s *Indem. Co.*, 588 F.2d 180, 182-83 (5th Cir. 1979) ("[T]he policies' reference to the offense of 'malicious prosecution' was not ambiguous and only a suit against [the defendant] for that offense would have created an obligation for the insurers to defend and indemnify."); *Heil Co. v. Hartford Accident & Indem. Co.*, 937 F. Supp. 1355, 1363 (E.D. Wis. 1996) ("Under Wisconsin law, the offense of 'malicious prosecution' is not ambiguous and only a lawsuit against the insured for malicious prosecution would create an obligation to defend."); *William J. Templeman Co. v. Liberty Mut. Ins. Co.*, 735 N.E.2d 669, 679 (Ill. App. Ct. 2000) ("We do not find the term 'malicious prosecution' as deployed in the policy to be ambiguous."). These cases support our conclusion that the Policy, which defined personal injury as injury arising out of specific offenses including abuse of process and malicious prosecution, unambiguously provided Hinkle with a reasonable expectation only for suits alleging those specific offenses.

**CONCLUSION**

{23}    The district court did not err in holding that State Farm did not have a duty to defend under the Policy and in granting summary judgment in favor of State Farm. Accordingly, we affirm.

{24}    **IT IS SO ORDERED.**

_____

**JAMES J. WECHSLER, Judge**

8

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**


_____
**LINDA M. VANZI, Judge**

**Topic Index for _Hinkle v. State Farm Fire & Cas. Co._, No. 31,707**

**APPEAL AND ERROR**
Standard of Review

**CIVIL PROCEDURE**
Summary Judgment

**CONTRACTS**
Ambiguous Contracts
Duty to Defend

**INSURANCE LAW**
Coverage
Duty to Defend
General Liability Insurance

**TORTS**
Abuse of Process
Malicious Abuse of Process
Malicious Prosecution