IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 17, 2005 Session

## ROGER M. RALPH, ET AL. v. ROBERT R. PIPKIN, ET AL.

**Direct Appeal from the Chancery Court for Lauderdale County**
**No. 12123     Martha B. Brasfield, Chancellor**

---

**No. W2004-0179-COA-R3-CV - Filed May 17, 2005**

---

Plaintiffs in this action, Roger Ralph and Kem Ralph, were sued in federal court for patent infringement and breach of contract. Their farmer's liability insurance carrier, Grange Mutual, denied coverage and refused to defend. Plaintiffs filed a complaint in the Lauderdale County Chancery Court against Grange Mutual seeking a declaratory judgment, a judgment for breach of contract, and specific performance. They also filed a complaint for professional negligence and breach of contract against their insurance agent, Pipkin Insurance Agency/Mr. Robert Pipkin. The trial court granted Grange Mutual's motion to dismiss and awarded the Pipkin Insurance Agency/Mr. Pipkin summary judgment. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

James L. Robertson, Jackson, Mississippi and David M. Livingston, Brownsville, Tennessee, for the appellants, Roger M. Ralph and Kem L. Ralph.

J. Kimbrough Johnson, Memphis, Tennessee, for the appellees, Robert R. Pipkin and Pipkin Insurance Agency.

Gary R. Wilkinson and C. Michael Becker, Memphis, Tennessee, for the appellee, Grange Mutual Casualty Company.

## OPINION

This lawsuit arises from a claim brought by Monsanto Company ("Monsanto) against Roger M. Ralph and Kem Ralph, d/b/a Ralph Brothers Farms ("the Ralphs"), for patent infringement and breach of contract. The Ralphs are farmers and partners in Ralph Brothers Farms near Covington. They have been farming together since 1977 and grow cotton, soybeans, and corn. In their

operations, they have routinely saved seed from their cotton and soybean crops and planted those seeds in subsequent years.

In 1996, Monsanto began marketing seeds with certain herbicide and insect resistant "traits." Monsanto licensed these patented seeds to other seed companies. In 1998, the Ralphs purchased seeds bearing the patented Monsanto traits and saved and cleaned the seed from their 1998 crop for use in 1999 and 2000. In January 2000, Monsanto sued the Ralphs for patent infringement and breach of contract, alleging the Ralphs "knowingly and intentionally used, saved, transferred, made, sold and/or offered for sale" the patented seed ("the Monsanto action").

The Ralphs gave timely notice of the Monsanto action to their commercial farmer's liability insurance carrier, Grange Mutual Casualty Company ("Grange Mutual"), and their insurance agent, Robert R. Pipkin (Mr. Pipkin). Grange Mutual denied coverage on April 25, 2001, and refused to defend the Ralphs against the Monsanto lawsuit. The Monsanto action went to trial in December 2002 in federal district court. Ultimately, Monsanto won a judgment for damages against the Ralphs.

Meanwhile, in September 2001, the Ralphs filed a complaint against Grange Mutual and the Pipkin Insurance Agency ("Pipkin Insurance") and Mr. Pipkin, who had sold them their liability policy. The Ralphs sought a declaratory judgment, a judgment for breach of contract, and specific performance. They asserted insurance coverage under the Grange Mutual policy under the property damage liability coverage; personal injury coverage; and advertising liability coverage. The Ralphs further asserted, in the alternative, a claim against Pipkin Insurance and Mr. Pipkin for breach of contract, negligent failure to procure coverage, and professional liability in tort.

Grange Mutual filed a motion to dismiss for failure to state a cause on December 10, 2001 and Mr. Pipkin filed a motion for summary judgment on June 20, 2002. The trial court granted both motions on May 14, 2004, and the Ralphs filed a timely notice of appeal to this Court. We affirm.

### *Issues Presented*

The Ralphs have raised 12 issues for our review. However, we perceive the dispositive issues to be:

(1)     Whether the trial court erred in determining that Monsanto's claims against the Ralphs were not covered under the commercial farmers' liability policy issued by Grange Mutual and in dismissing the Ralphs' action against Grange Mutual.

(2)     Whether the trial court erred by granting summary judgment to Robert Pipkin and Pipkin Insurance on the Ralphs' claim for professional negligence and failure to provide insurance.

***Dismissal of Action Against Grange Mutual***

A Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint itself. *Cook v. Spinnakers of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994). The grounds for such a motion is that the allegations of the complaint, if considered true, are not sufficient to constitute a cause of action as a matter of law. *Id.* A motion to dismiss should be granted only if "it appears that the plaintiff can establish no facts supporting the claim that would warrant relief."[1] *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999). We review a trial court's award of a motion to dismiss *de novo*, with no presumption of correctness. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997).

We begin our analysis of this issue by noting that the courts review an insurance policy under contract principles. *Certain Underwriter's at Lloyd's of London v. Transcarriers Inc.*, 107 S.W.3d 496, 499 (Tenn. Ct. App. 2002)(citations omitted). As long as the terms of a contract are unambiguous, the contract will be enforced as written. *Id.* We generally will construe ambiguous terms against the drafter. *Id.* However, the courts will not rewrite an unambiguous term simply to avoid harsh results. *Id.* The interpretation of a contract is a matter of law which we review *de novo*, with no presumption of correctness afforded to the trial court. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999).

In their 2001 complaint, the Ralphs asserted that, under the commercial farmers' liability insurance policy, Grange Mutual was required to defend them against the Monsanto action and to insure them against any liability to Monsanto. The Ralphs prayed for a declaratory judgment that, under the policy, Grange Mutual is legally obligated to pay them any sums that they may become obligated to pay to Monsanto as damages. They further prayed for an award of specific performance

---

[1]Under Rule 7.02(1) of the Tennessee Rules of Civil Procedure, a motion to dismiss must "state with particularity the grounds therefor." The party moving for dismissal must state the particular grounds for the motion in the motion itself. Merely moving for dismissal based on the failure to state a claim and stating the grounds in an accompanying memorandum does not fulfill the requirement. *Willis v. Tennessee Dept. of Corr.*, 113 S.W.3d 706, 709 n.2 (Tenn. 2003). Additionally, under Tennessee Rule of Appellate Procedure 24(a), trial briefs and memoranda of law are not part of the record on appeal. *Id.*

In *Finchum v. Ace, USA*, this Court stated that it would "*sua sponte* require proper procedures to be followed." *Finchum v. Ace, USA*, 156 S.W.3d 536, 538 n.2 (Tenn. Ct. App. 2004)(Susano, J., dissenting). In *Finchum*, we held that the trial court should not have considered a motion to dismiss that failed to fulfill the requirements of Rule 7.02 and, accordingly, vacated the trial court's judgment and remanded the matter for further proceedings. *Id.* at 539.

In the case now before us, Grange Mutual's motion to dismiss failed to state with particularity why the Ralphs' cause of action should be dismissed for failure to state a claim. However, Grange Mutual fully addressed the grounds in its brief to this Court, the trial court clearly stated the grounds for dismissal in its order, and the Ralphs have not raised the deficiency of the motion to dismiss as an issue for our review. Additionally, we observe that in *Willis*, the Tennessee Supreme Court considered the merits of the motion to dismiss notwithstanding the motion's deficiency. In the interests of judicial economy, therefore, we will follow the *Willis* court's lead and address the merits of Grange Mutual's motion to dismiss.

We emphasize, however, that a motion to dismiss that merely states that a party moves for dismissal under Rule 12.02 but fails to "state with particularity the grounds" supporting the motion is procedurally inadequate under our Rules of Civil Procedure.

requiring Grange Mutual to defend them against the Monsanto action and to reimburse them for all attorneys fees and expenses incurred by them to defend the action. The Ralphs also prayed for a permanent injunction enjoining Grange Mutual from refusing to honor its obligations under the policy as alleged, for prejudgment interest, and for punitive damages.

The issue before this Court is whether the insurance policy issued by Grange Mutual, read in such a way as to construe any ambiguity against Grange Mutual, provides coverage where a third party has brought an action for patent infringement and breach of contract. In their brief to this Court, the Ralphs do not contend that the insurance policy protects them against liability for damage to intangible intellectual property. Section IV of the policy, moreover, defines "property damage" as "physical damage to *tangible* property, including all resulting loss of use of that property." (Emphasis added.) Rather, the Ralphs' argument, as we understand it, is that Monsanto's damages result from the loss of use of tangible property (gene sequences or the "traits" contained in the seeds) and are within the policy's property damage liability coverages; that Monsanto's damages result from disparagement and are within the personal injury liability coverage; and that Monsanto's damages arise from infringement of Monsanto's "title" in the seeds and are within the advertising liability coverage.

We agree with the trial court that the contract of insurance does not obligate Grange Mutual in this case. Although we find the Ralph's arguments to be intriguing, as the trial court observed, Monsanto did not bring an action against the Ralphs for property damage, disparagement, or damages resulting from the Ralphs' advertising, but for patent infringement and breach of contract.

We agree with the trial court that an action for patent infringement is not equivalent to an action for damages to tangible property or for personal injury as defined by this contract of insurance. The purpose of the patent laws is to "promote the Progress of Science and useful Arts." U.S. Const., Art. I, § 8, cl. 8.; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 730 (2002). To this end, a patent rewards innovation by giving the inventor a temporary monopoly. *Festo Corp.*, 535 U.S. at 730. This monopoly is a property right. *Id.* However, it is an intellectual property right that protects an item from being copied until the monopoly right has expired. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33 (2003). As this Court has noted, intellectual property is part of "a species of intangible personal property . . . as opposed to tangible personal property that can be seen, felt, weighed and measured." *Corporate Catering, Inc. v. Corporate Catering, LLC*, No. M1997-00230-COA-R3-CV, 2001 WL 266041, at *5 (Tenn. Ct. App. Mar. 20, 2001) (*no perm. app. filed*). The law recognizes important differences between the two. For example, in Tennessee, a civil action for conversion, the wrongful appropriation of tangible property, is not recognized for the appropriation of intangible personal property. *B & L Corp. v. Thomas & Thorngren, Inc.*, 917 S.W.2d 674, 680 (Tenn. Ct. App. 1995).

Contrary to the Ralphs' contention, the gravamen of the Monsanto action for patent infringement was not predicated on physical damage to the seeds or the "traits." Nor was the Monsanto action one for personal injury. On the contrary, the "damage" to the physical, tangible seeds evidence the occurrence and extent of the wrongful misappropriation of Monsanto's

intellectual property right. The property actually damaged was Monsanto's right to a monopoly over its innovation under the patent. Although Monsanto's intellectual property right could not have been damaged without some physical interference with its patented innovation, Monsanto's right to damages does not arise from the loss of tangible property, but from the loss of its monopoly right. The measure of the extent of that loss notwithstanding (e.g., technology fees), it is not damage to tangible property for which it seeks compensation. This intellectual property right is an intangible intellectual property not covered by the policy of insurance issued by Grange Mutual.

Likewise, the Monsanto action in not an action for personal injuries arising from disparagement. The policy of insurance issued by Grange Mutual defines "personal injury" as "injury, other than 'bodily injury,' arising out of one or more of the following offenses." An offense enumerated by the policy, which the Ralphs' assert is applicable here is "[o]ral or written publication of material that . . . disparages a person's or organization's goods, products or services[.]" We agree with the trial court that patent infringement is not equivalent to personal injury arising from disparagement.

Disparagement is defined as a statement which is intended to "be understood or which is reasonably understood to cast doubt upon the existence or extent of another's property in land, chattels, or intangible things, or upon their quality." *Black's Law Dictionary* 422 (5th ed. 1979). Disparagement of goods is defined as "[a] statement about a competitor's goods which is untrue or misleading and is made to influence or tends to influence the public not to buy." *Id.* Disparagement of title is "detraction from title . . . [i]njurious falsehood in which aspersion is cast on person's title to property."

Certainly, actions may be maintained for disparagement of products. *See, e.g., Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485 (1984). Likewise, actions may be maintained for disparagement and dilution of intellectual property such as trademarks. *See, e.g., Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 431 (2003). However, an action for patent infringement is not an action for disparagement. *See, e.g., U.S. Test, Inc. v. NDE Environmental Corp.*, 196 F.3d 1376, 1382 (Fed. Cir. 1999). Additionally, we note that the Monsanto action is not predicated on an "oral or written publication of material that . . . disparages" that would be covered under the Grange Mutual policy of insurance. Thus, the Ralphs' argument must fail.

The Ralphs' further contend that Monsanto's damages arise from their infringement of Monsanto's "title" to the seeds and is covered by the advertising clause of the contract for insurance. Federal courts construing policies with language identical to that of the advertising clause in this case have noted that infringement of title unequivocally cannot be construed to mean patent infringement. *Id.* at 1381.

As the *U.S. Test* court noted, the courts have uniformly held that this standard, identical language in advertising clauses does not include coverage for patent infringement. *Id.* at 1380-81 (citing: *See United Nat'l Ins. Co. v. SST Fitness Corp.*, 182 F.3d 447, 452 n. 2 (6th Cir.1999); *Herman Miller, Inc. v. Travelers Indem. Co.*, 162 F.3d 454, 455, 49 USPQ2d 1223, 1224 (6th

Cir.1998); *Heil Co. v. Hartford Accident & Indem. Co.*, 937 F.Supp. 1355, 1365 (E.D.Wis.1996); *Owens-Brockway Glass Container v. International Ins. Co.*, 884 F.Supp. 363, 367 (E.D.Cal.1995); *Gencor Indus., Inc. v. Wausau Underwriters Ins. Co.*, 857 F.Supp. 1560, 1564, 32 USPQ2d 1296, 1298 (M.D.Fla.1994); *St. Paul Fire & Marine Ins. Co. v. Advanced Interventional Sys.*, 824 F.Supp. 583, 586, 27 USPQ2d 1624, 1626 (E.D.Va.1993); *Julian v. Liberty Mut. Ins. Co.*, 43 Conn.App. 281, 682 A.2d 611, 613-14 (Conn.App.1996) (following Owens-Brockway, Gencor, St. Paul ); *Maxconn Inc. v. Truck Ins. Exch.*, 74 Cal.App.4th 1267, 88 Cal.Rptr.2d 750, 756 (Cal.Ct.App.1999); *Filenet Corp. v. Chubb*, 324 N.J.Super. 476, 735 A.2d 1203, 1215-16 (N.J.Super.Ct.Law Div.1997)). We agree with these courts that it is apparent from the language of the policy that the parties did not intend that patent infringement would be covered under the policy as an "advertising injury."

Finally, we reject the Ralphs' argument that Monsanto's claim for relief *could* have been one for "all damages suffered by Monsanto because of the property damage described above [damage to tangible property (seeds and gene sequences)]; all damages suffered by Monsanto because of personal injury as described above; and/or all damages suffered by Monsanto because of advertising injury as described above[.]" This is not, contrary to the Ralphs' contention otherwise, a question of mere semantics. Absent its patent, Monsanto simply would have had no cause of action against the Ralphs. The damages to Monsanto resulting from the Ralphs infringement of its patent are not covered by the commercial farmers' liability policy issued by Grange Mutual. Accordingly, we affirm judgment of the trial court granting Grange Mutual's motion to dismiss.

### *Award of Summary Judgment to Pipkin*

Summary judgment is appropriate only when the moving party can demonstrate that there are no disputed issues of material fact, and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party moving for summary judgment must affirmatively negate an essential element of the nonmoving party's claim, or conclusively establish an affirmative defense. *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998).

When a party makes a properly supported motion for summary judgment, the burden shifts to the nonmoving party to establish the existence of disputed material facts. *Id.* A mere assertion that the nonmoving party has no evidence does not suffice to entitle the moving party to summary judgment. *Id.* In determining whether to award summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000). The court should award summary judgment only when a reasonable person could reach only one conclusion based on the facts and the inferences drawn from those facts. *Id.* Summary judgment is not appropriate if there is any doubt about whether a genuine issue of material fact exists. *McCarley*, 960 S.W.2d at 588. We review an award of summary judgment *de novo*, with no presumption of correctness. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn.2002).

In this case, the Ralphs' argument, as we understand it, is that, in the alternative, if the policy issued by Grange Mutual does not obligate Grange Mutual to defend and indemnify the Ralphs against the Monsanto action, then Mr. Pipkin negligently failed to procure coverage that would cover them "one hundred percent" as promised by Mr. Pipkin. We begin our analysis by noting that the Ralphs do not contend that the Grange Mutual policy is not a standard commercial farmers' liability policy. Likewise, the Ralphs do not assert that they specifically requested insurance against claims of patent infringement. Rather, they submit they requested coverage against all foreseeable risks; that by 1996 the risk of an action for patent infringement arising from the increased use by area farmers of seed containing patented technologies was known and foreseeable by Mr. Pipkin, who held himself out to be experienced and knowledgeable in the industry; and that Mr. Pipkin negligently failed to provide the "100%" coverage against all foreseeable risks.

Mr. Pipkin, in response, asserts that insurance coverage is not available and cannot be procured from insurance companies for breach of contract, patent infringement, intentional acts, and fraud. He asserts the Ralphs sought and received a standard commercial farmers' liability policy; that they first obtained the policy in 1996 and renewed the same policy from 1997-2000; and that he cannot be held liable for the Ralphs' failure to read and understand the policy. In the alternative, Mr. Pipkin asserts that, under Tennessee Code Annotated § 56-6-115(b), if he was negligent in failing to procure the coverage sought by the Ralphs, Grange Mutual, as the insurance agent's principal, is liable for any negligence.

We begin our analysis by noting that this case is not about the negligence of an insurance agent to maintain an existing policy or to procure a coverage requested by an insured. The Ralphs do not dispute that Mr. Pipkin procured a standard commercial farmers' liability policy or that he maintained the policy. Rather, in this case, the Ralphs assert that they did not understand what kind of coverage they had purchased, or the extent of coverage they might need. Roger Ralph stated in his affidavit the he had

> never understood that it was the insurance customer's responsibility to know of all the risks to which he is exposed . . . I know that other people and their lawyers will sue you over a lot of different things, and I know I can't keep up with all of these and I certainly can't figure out all of these in advance. I have lived long enough to know that the things that other people can sue you over keep changing.

In essence, the Ralphs assert that they relied on Mr. Pipkin to procure coverage against any civil action.

This Court has noted that "it is a universal general rule that an agent or broker of insurance who, with a view to compensation for his services, undertakes to procure insurance for another, and unjustifiably and through his fault or neglect, fails to do so, will be held liable for any damage resulting therefrom." *Massengale v. Hicks*, 639 S.W.2d 659, 660 (Tenn. Ct. App. 1982). The Tennessee Code, moreover, provides that an insurance agent who solicits or negotiates an application for insurance shall be regarded as the agent of the insurer. Tenn. Code Ann. § 56-6-115(b)(2004

Supp.). This statute has been liberally construed in favor of the insured, moreover, in order to "prevent the insurance company from denying responsibility for representations and actions from the agent from whom applications are voluntarily accepted and to protect an applicant who relies on such representations or actions." *Bill Brown Const. v. Glens Falls Ins.*, 818 S.W.2d 1, 4 (Tenn. 1991) (quoting 15 Tenn. Jurisprudence, *Insurance*, § 9 at 180-81(1984); quoting *Industrial Life & Health Ins. Co. v. Trinkle*, 30 Tenn. App. 243, 204 S.W.2d 827 (1947)).

In *Brown Construction*, the Tennessee Supreme Court held that insurance companies do not have "immunity from legal liability for express commitments" made by their agents. *Id.* at 13. It also analogized a contract of insurance to a good under the law of sales and quoted *Vulcan Life and Accident Insurance Company v. Segars*, 391 S.W.2d 393, 397-98 (Tenn. 1965), for the proposition that, like a vender supplying an article which he knows is to be used for a specific purpose, the insurance agent impliedly warrants that the contract of insurance is suitable for that for which it is purposed. *Id.* at 11-12.

However, the courts of this state have repeatedly noted that the value of all contracts would be destroyed if, in the absence of fraud, a party was permitted to admit that he signed a contract but did not read it or know its stipulations. *Beasley v. Metropolitan Life Ins. Co.*, 229 S.W.2d 146, 148 (Tenn. 1950)(citing with approval, 17 C.J.S., *Contracts*, § 137). In this case, Mr. Pipkin provided a standard commercial farmers' liability policy. The Ralphs do not allege that Mr. Pipkin misrepresented the coverages of the policy or that he failed to procure coverages requested. They argue only that did not know whether the Grange Mutual policy protected them against liability for patent infringement, but that it should have. They assert Mr. Pipkin was negligent in failing to provide such coverage because it was foreseeable that farmers such as themselves would have been exposed to claims of patent infringement arising from the saving of seed.

Foreseeability is an essential element of duty. *Biscan v. Brown*, No. M2001-02766-SC-R11-CV, --- S.W.3d ----, 2005 WL 712461, at *15 (Tenn. 2005). In this case, we find it unnecessary to address Mr. Pipkin's assertion that insurance against patent infringement and the actions alleged by Monsanto in its complaint against the Ralphs is not available because it cannot reasonably be argued that the Monsanto claim against the Ralphs was foreseeable at the time the policy was issued in 1996 or when it was renewed in 1998. The Ralphs actions giving rise to Monsanto's cause of action for patent infringement occurred in 1998. The Ralphs assert that, beginning in 1996, Monsanto introduced and began the commercial sale of its genetically modified, patented seed. They further submit in their brief to this Court that saving seed produced in one crop year for use in subsequent years was "routine" among farmers and that Monsanto "has moved heaven and earth to change all of this" beginning in 1996. They assert that although Monsanto started suing farmers for saving and replanting the seed, they "did not know this until much later." Thus, it simply was not foreseeable in 1996 or 1998 that farmers' liability policies provided less than full coverage against foreseeable risks when they did not provide coverage against patent infringement of the type alleged in the Monsanto complaint. Accordingly, we affirm summary judgment for Mr. Pipkin and the Pipkin Insurance Agency.

### *Holding*

In light of the foregoing, the judgment of the trial court is affirmed.  Costs of this appeal are taxed to the Appellants, Roger M. Ralph and Kem L. Ralph d/b/a Ralph Brothers Farms, and to their surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE