IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 17, 2011 Session

## CASANDRA CORNWELL v. TROY CORNWELL

**Appeal from the General Sessions Court for Blount County**
**No. S-12137      Robert L. Headrick, Judge**

**No. E2010-02654-COA-R3-CV-FILED-SEPTEMBER 27, 2011**

This case involves the plaintiff's motion seeking an order holding her former husband in contempt for failing to make certain monthly payments of $1,071 from his military retirement as required by the terms of a marital dissolution agreement incorporated into the parties' divorce judgment. The wife's former spouse stopped making the payments after the wife remarried. The trial court denied the motion upon finding that the payments in question were alimony subject to modification rather than a property distribution as the wife contends. The court held that Mr. Cornwell "properly" stopped paying the "alimony" when his former wife remarried. The wife has appealed. We reverse the judgment of the trial court and remand for a hearing on the wife's motion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court
Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

John W. Cleveland, Sr., Sweetwater, Tennessee, for the appellant, Casandra Cooper, formerly Cornwell.

Martha Meares and Paul Dillard, Maryville, Tennessee, for the appellee, Troy Cornwell.

**OPINION**

I.

The material facts in this case are not in dispute. Casandra Cooper ("Wife"), formerly Cornwell, and Troy Cornwell ("Husband") were divorced on February 25, 2005. The divorce judgment approved and incorporated a marital dissolution agreement ("the MDA") executed

by the parties, which the trial court found to be a "fair and equitable distribution of the parties' marital assets and liabilities." The court made no findings in its judgment of need or other factors that would justify or otherwise indicate an award of alimony, nor did it make any reference to "alimony" words such as spousal support, maintenance or alimony. The MDA likewise makes no mention of need or factors that would justify or indicate an award of alimony. In fact, the MDA makes absolutely no mention of alimony in any way. To the contrary, the MDA states that its purpose is to "make a complete settlement of the parties' respective property rights, child support and co-parenting, and provide for other rights and obligations growing out of the marital relationship . . . ." The MDA does recite that Husband's gross annual income is $84,000; the section of the MDA in which Wife's income would have been set forth is noted to be "Not Applicable." Paragraph 6 of the MDA is the focal point of this appeal. It states,

> Wife shall receive a monthly payment of One Thousand Seventy-One Dollars ($1,071.00) from Husband's military retirement account, pension plan, IRA or 401(k) plan, free from any claim, let or hindrance of Husband. Wife shall receive this payment until the youngest child reaches the age of eighteen.

The MDA awarded one vehicle to Husband and made him responsible for the payments on that vehicle; awarded the other vehicle to Wife and made her responsible for the payments; and awarded the marital home to Wife and made her responsible for the mortgage. It also awarded the parties their separate properties brought into the marriage. There was no language in the MDA directly or indirectly indicating an award of alimony.

Wife remarried in January 2006. Husband continued to make the court-decreed monthly payments until mid-2008 when, acting upon the advice of counsel, he stopped. Wife filed a motion on March 18, 2009, asking that Husband be held in contempt and be ordered to pay "the sum of $9,426[] which is the total of all missed payments and that he be required to keep all future payments current."

The court heard the testimony of the parties in a hearing held July 27, 2009. The parties stipulated on the record the facts we have recited to this point. Wife testified that, after the divorce, she received numerous pieces of mail addressed to Husband that indicated they contained retirement benefit information from "T. Rowe Price." She did not open the mail. Husband testified that his only retirement benefit was his military retirement.

After hearing argument of counsel, the court announced from the bench that it would be denying the motion "in light of . . . the Duncan vs. Duncan matter." The court was referring to the case of *Wynona (Duncan) Dunn v. Robert Duncan*, M2004-02216-COA-

R3-CV, 2006 WL 1233046 (Tenn. Ct. App. M.S., filed May 8, 2006). Its order adopts Husband's proposed findings of fact and conclusions of law, and states that "[t]he payment of money to [Wife] by [Husband] in the . . . [MDA] was Alimony in Futuro." The court further held that Husband "properly stopped paying alimony to [Wife] as a result of her remarriage."

II.

Wife timely filed a notice of appeal. The issue as stated in her brief is:

> Whether the Trial Court erred in finding that [Husband's] installment payments of equitably divided marital property to [Wife] are alimony *in futuro*.

III.

Although the trial court purported to adopt "findings of fact" recited by Husband, we note that little if any dispute exists as to the facts. Rather, this case involves the correct interpretation of the meaning and effect of the MDA which is reviewed as stated in ***Barnes v. Barnes***, 193 S.W.3d 495, 498 (Tenn. 2006):

> A marital dissolution agreement is a contract and thus is generally subject to the rules governing construction of contracts. ***Johnson v. Johnson***, 37 S.W.3d 892, 896 (Tenn. 2001); ***Honeycutt v. Honeycutt***, 152 S.W.3d 556, 561 (Tenn. Ct. App. 2003). Because "the interpretation of a contract is a matter of law, our review is de novo on the record with no presumption of correctness in the trial court's conclusions of law." ***Honeycutt***, 152 S.W.3d at 561 (citations omitted).

Our goal in interpreting the MDA

> is to ascertain and give effect to the parties' intentions. ***Ahern v. Ahern***, 15 S.W.3d 73, 81 (Tenn. 2000). Our search for the parties' intentions must focus on the MDA itself. Each provision of an MDA should be construed in light of the entire MDA, and the language in these provisions should be given its natural and ordinary meaning. We should construe MDAs fairly and reasonably, and we should avoid rewriting these agreements under the guise of "construing" them. ***Duvier v. Duvier***, No.

-3-

01A01–9311–CH–00506, 1995 WL 422465, at *3 (Tenn. Ct.
App. July 19, 1995) (No Tenn. R.App. P. 11 application filed).

*Elliott v. Elliott*, 149 S.W.3d 77, 84 (Tenn. Ct. App. 2004).

IV.

We are constrained for several reasons to conclude that the payments in question were a distribution of marital property, not subject to modification. *See Johnson v. Johnson*, 37 S.W.3d 892, 897 (Tenn. 2001)(apportionment of marital property is not subject to modification). First, we are persuaded that if the parties had intended the payments to be alimony, they would have called them something of that nature or at least made some mention of some term indicative of spousal support. The MDA in this case recites an intent to settle "respective property rights" but makes no mention of spousal support. Statutory language at Tenn. Code Ann. § 36-5-121(m) (2010) that allows a court to affirm, ratify or incorporate in its judgment "an agreement of the parties as to support and maintenance" suggests to us that an agreement which makes no mention of need, maintenance, or spousal support, cannot have been ratified or incorporated *as an alimony award*. Surely, an agreement to provide some form of spousal support would make some mention of some term that is at least synonymous with or indicative of alimony. Husband wants us to infer that even though the parties referred in their MDA to "property rights" and proceeded to list the military pension among the properties being divided, and even though the divorce judgment recites that the MDA makes a "fair and equitable distribution of the parties' marital assets and liabilities" with no mention of spousal support, both the divorcing court and the parties were really making provision for alimony. The facts simply do not compel such a decision.

Our second reason for holding that the ordered payment is a division of property is, as Wife points out, that Tenn. Code Ann. § 36-4-121(b)(1)(B)(2010) defines "marital property" to include "the value of vested and unvested pension, vested and unvested stock option rights, retirement and other fringe benefit rights relating to employment that accrued during the period of the marriage." This is exactly the type of "property" that is the subject of this appeal. The payment is to be made "from Husband's military retirement account, pension plan, IRA or 401(k) plan . . . ." Husband attempts to make much of the fact that his military time was longer than the length of the marriage, and that he is now obligated to pay Wife the full measure, rather than part, of his military retirement. Neither Husband nor this Court is in a position to question the wisdom of the distribution agreed to by the parties. We do not rewrite contracts simply to avoid harsh or unwise provisions. *Ralph v. Pipkin*, 183 S.W.3d 362, 367 (Tenn. Ct. App. 2005).

-4-

The payments at issue in this case were periodic distributions of marital property rather than alimony. Husband testified at the hearing on the motion for contempt that the only retirement account he has is the military retirement account. Husband attempts to distinguish the *Johnson* case by arguing that because Wife receives 100% of the money in the account until such time as the youngest child reaches the age of majority, "[t]here is no *division* of military retirement benefits in the present matter." (Emphasis added.) He further states, "If there had been a *division* of the marital portion, it would have been for a fractional amount of the benefit just like the wife in *Johnson* who received 'half.' " (Emphasis added). Husband's argument that the resolution of this contention depends upon percentages does not persuade us. The fact of the matter is that Husband has not bargained away 100% of this asset. He will start receiving whatever the pension pays when his youngest child reaches majority. The length of Husband's life and other factors will eventually determine what percentage of the sum total of the retirement benefits goes to Husband.

For the reasons we have stated, we hold that the trial court erred in treating the payment of "$1,071[] from Husband's military retirement account" as alimony. It was a distribution of marital property that, under the holding of *Johnso*n, was not subject to modification. The trial court's reliance on *Dunn v. Duncan*, 2006 WL 1233046 (Tenn. Ct. App. May 8, 2006) is misplaced. In *Dunn* the marital dissolution agreement clearly provided spousal support to Mrs. Duncan. The parties called the award "Alimony in Solido." *Id*. at *1. The issue in that case was whether certain contingencies in the marital dissolution agreement about Mr. Duncan's continued employment and abilities versus disabilities meant that the parties had mislabeled as alimony in solido what was actually alimony in futuro, subject to modification. We held that the contingencies kept the spousal support award from being alimony in solido and affirmed the trial court's termination of the alimony in futuro payment upon Mrs. Duncan's marriage to Mr. Dunn. *Id*. at *4. Under the facts of the instant appeal, *Dunn* has no precedential value.

V.

The judgment of the trial court is reversed. Costs on appeal are taxed to the appellee, Troy Cornwell. This case is remanded, pursuant to applicable law, for a hearing on Wife's motion consistent with this opinion.

_____
CHARLES D. SUSANO, JR., JUDGE