
IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 2, 2016



## MOORE & ASSOCIATES MEMPHIS LLC v. GREYSTONE HOMEOWNERS ASSOCIATION INC.

**Appeal from the Chancery Court for Shelby County
No. CH-14-0268      Jim Kyle, Chancellor**

———————————————————

**No. W2016-00721-COA-R3-CV**

———————————————————

This appeal involves the interpretation of a declaration of covenants for a homeowners' association. Appellant, the homeowners' association, filed liens on lots owned by Appellee for nonpayment of association fees. Appellee brought suit to quiet title and for damages for slander of title. The trial court dismissed the slander of title claim and interpreted the declaration of covenants to exempt Appellee from the payment of association fees. The trial court removed the liens filed against Appellee's lots, but assessed no monetary damages against Appellant. Appellant appeals. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ANDY D. BENNETT and THOMAS R. FRIERSON, II, JJ., joined.

Peter Baskind, Robin H. Rasmussen, and Megan Black Ross, Memphis, Tennessee, for the appellant, Greystone Homeowners Association, Inc.

Lewis Clayton Culpepper, III, Memphis, Tennessee, for the appellee, Moore & Associates, Memphis, LLC.

## OPINION

## I. Background

In December of 2010, Moore & Associates, Memphis, LLC ("Appellee" or

"Moore") purchased from the developer, Greystone General Partnership, twenty-seven lots in a gated, residential community near Memphis, Tennessee. Charles Moore is the managing member of Moore. Greystone Homeowners Association, Inc. ("Appellant" or "Greystone Association") is the homeowners' association for the Greystone residential development. Moore received title to the lots by warranty deed in lieu of foreclosure because the developer was facing bankruptcy and foreclosure by SunTrust Bank. Moore purportedly purchased the lots with the intention of building homes on the lots to sell to third parties.

As a part of Greystone residential community, Moore's lots are subject to the "Declaration of Covenants, Conditions and Restrictions for Greystone, P.D." ("CCR"), which was drafted by one of the general partners and executed on July 16, 2001. The CCR provides that each lot owner becomes a member of the Greystone Association, and, as a member, each lot owner must pay assessments to Greystone Association, including regular assessments, special assessments, and emergency assessments. Article IX, section I of the CCR exempts two types of entities from paying the assessments:

> The Developer-Declarant shall not be required to pay assessments on any lot owned by it. Any third party purchasing a lot from Developer-Declarant for the purpose of constructing a single-family residence for sale to the general public shall not be required to pay assessments so long as said third party does not occupy the property.

Immediately following its purchase of the lots, Moore paid $25,000.00 to Greystone Association. Charles Moore described this payment as a "goodwill gift," but denied that the $25,000.00 was paid as assessment fees.

In furtherance of its plan to build homes on the lots before selling them, in July of 2013, Moore contracted with Cade Peeper, a licensed contractor, to build a single-family residence on one of its lots. The home was completed by the builder. For reasons it attributed to Greystone Association, Moore did not build additional homes in the Greystone development. Moore did sell two unimproved lots in June 2012 and April 2013, respectively.

On January 31, 2014, Appellant filed liens on the remaining lots owned by Moore. The liens, which totaled $128,100.00, were for alleged assessment arrears. On February 21, 2014, Moore filed an action in the Shelby County Chancery Court ("trial court"), seeking a declaratory judgment to quiet title relative to the liens filed by Appellant and seeking damages for slander of title. In its complaint, Moore averred that it was exempt, under the CCR, from paying assessments. Specifically, Moore argued that, pursuant to article IX, section 1 (*supra*), it was a third-party that had purchased lots from the developer with the purpose of constructing single-family residences for sale to

the general public.[1]

On April 4, 2014, Appellant answered the complaint, alleging that Moore did not qualify for an assessment exemption under the CCR and, therefore, Appellant was entitled to collect the assessment arrearage. Appellant also filed a counterclaim against Moore, asserting claims for breach of contract and unjust enrichment for Moore's failure to pay homeowners' association fees. On April 11, 2014, Moore answered the counterclaim, denying Appellant's allegations.

On October 24, 2014, Moore filed a motion for summary judgment, reiterating its argument that it is exempt from paying association fees under the plain language of the CCR. On February 27, 2015, Appellant filed its response to Moore's motion for summary judgment, contending that Moore does not qualify for an exemption under the CCR. Specifically, Appellant argued that because Moore is not the developer or assignee of the developer and did not purchase the lots for the purpose of constructing homes on the lots for sale, Moore is not exempt from payment of association fees. As support for its position, Appellant cited Mr. Moore's deposition testimony, in which he stated that Moore is not a contractor and may not itself legally construct homes on the lots for sale to the public. Appellant also noted that Moore's real estate advertisement for its lots listed twenty-five unimproved lots for sale. The trial court denied Moore's motion for summary judgment by order dated April 24, 2015.[2]

On March 8 and 9, 2016, the trial court heard the case. In its judgment, filed on March 22, 2016, the trial court found, in relevant part:

> The Court finds that Moore is not the Developer-Declarant, and does not qualify as a successor or assign of the Developer-Declarant. Although Moore purchased all the remaining land held by the Developer-Declarant at Greystone, the great weight of the evidence at trial indicates that Moore was not, and did not, become the Developer-Declarant, and is not entitled to exemption from assessments as the Developer-Declarant.
>
> The Court finds that Moore is entitled to exemption from payment of assessments based upon the second exemption in Art. IX, Sec. 1. The

---

[1] At trial, Moore also argued that it fulfilled the first exemption, because by purchasing all of the remaining lots and the other land in the development, it had become a successor to the Developer-Declarant's rights. On appeal, the parties agreed that Moore did not fall within the Developer-Declarant exemption.

[2] After the denial of the motion for summary judgment and before the bench trial, on November 16, 2015, Appellant filed a motion for recusal, with a supplemental memorandum of law filed on December 8, 2015. On February 5, 2016, the trial court transferred the matter to a different section of the Shelby County Chancery Court.

Court concludes, based upon Charles X. Moore's testimony and expert testimony offered at trial, that Moore is a third party which purchased lots from the Developer-Declarant for the purpose of constructing single family residences for sale to the general public, and that Moore does not occupy such residences. Based upon the testimony of Charles X. Moore, the Court determines that Moore's purpose in purchasing the Subject Lots was for constructing single family residences for sale to the general public. The Court concludes that common sense indicates that Moore purchased the Subject Lots for the purpose of constructing single family residences for sale to the general public. The Court considered the testimony of the Association's expert, Michael Hewgley, who testified that if a consumer purchases a lot and hires a builder, that consumer would immediately be responsible for payment of assessments. Conversely, if a builder bought the lot, the lot would be exempt until the home built upon it is occupied.

It is undisputed that Moore does not hold a contractor's license. The Court finds, however, that the word "constructing" in Art. IX, Sec. I does not require Moore to hold a contractor's license to qualify as a third party "constructing single family residences for sale to the general public." The Court finds that Moore's testimony indicates his purpose in purchasing the Subject Lots.

Since The Court finds that Moore is entitled to an exemption from assessments on the Subject Lots, pursuant to Art. IX, Sec. 1, the Association's claims for assessments should be dismissed.

The Court finds that Moore's claims for damages and [s]lander of [t]itle should be dismissed. Moore presented no proof of damages arising from the actions of the Association. Moore's claim for damages should, therefore, be dismissed. Moore failed to present any evidence of malicious activity by the Association in filing of any notices of lien against the Subject Lots. Accordingly, Moore's claim for Slander of Title should be dismissed. The Association is not required to return any monies to Moore including a $25,000.00 payment from Moore that the Court concludes was a gift.

Based on the foregoing findings, the trial court ordered that: (1) the titles for the lots were cleared; (2) Moore was not entitled to any damages; and (3) Appellant was to pay costs. Appellant appeals.

## II. Issue

Appellant raises the following issue for review, as stated in its brief:

- 4 -

Whether the Trial Court erred in its interpretation of [a]rticle IX, [s]ection I of the Declaration of Covenants, Conditions, and Restrictions for Greystone P.D., when the Trial Court found that Moore & Associates, Memphis, LLC, a member of Greystone Homeowners Association, Inc., is exempt from paying homeowners association assessments under [a]rticle IX, [s]ection I, which requires every member of the association to pay assessments unless a member purchases a lot for the purpose of constructing a single family residence for sale to the general public, and Moore only purchased lots for the purpose of flipping the lots for a higher price and not to construct single-family residences.

### III. Standard of Review

This case was tried without a jury. Therefore, we review the trial court's findings of fact *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). The trial court's conclusions of law, however, are reviewed *de novo* and "are accorded no presumption of correctness." ***Brunswick Acceptance Co., LLC v. MEJ, LLC***, 292 S.W.3d 638, 642 (Tenn. 2008).

### IV. Analysis

This appeal concerns the interpretation of the CCR, which was drafted by Terry Dan, one of the general partners of Greystone General Partnership. Specifically, the outcome of this case turns on the provision concerning the entities that are exempt from paying assessments to Appellant. The provision at issue, article IX, section I, provides:

> The Developer-Declarant shall not be required to pay assessments on any lot owned by it. Any third party purchasing a lot from Developer-Declarant for the purpose of constructing a single-family residence for sale to the general public shall not be required to pay assessments so long as said third party does not occupy the property.

In its brief, Moore concedes that the first exemption, i.e., the Developer-Declarant exemption, does not apply to Moore. The dispute concerns whether Moore falls under the second exemption in the CCR: "[a]ny third party purchasing a lot from Developer-Declarant for the purpose of constructing a single-family residence for sale to the general public shall not be required to pay assessments so long as said third party does not occupy the property." Appellant argues that Moore is not "constructing" homes for third parties if Moore does not, itself, construct the homes, i.e. obtain a contractor's license and build a structure on each lot. Appellant further argues that this exemption is intended to protect only builders who purchase lots from the developer, and Moore is not a builder. Therefore, Appellant argues that Moore is not exempt from paying assessments.

- 5 -

As this Court has determined, the construction and interpretation of covenants, conditions, and restrictions pertaining to property are construed as contracts; accordingly, we apply "the rules of construction generally applicable to the construction of other contracts." *Maples Homeowners Ass'n, Inc. v. T & R Nashville Ltd. P'ship*, 993 S.W.2d 36, 38-39 (Tenn. Ct. App. 1998) (stating, in relevant part, "[c]ovenants, conditions, and restrictions… are property interests that run with the land. They arise, however, from a series of overlapping contractual transactions. Accordingly, they should be viewed as contracts….") (citations omitted). In interpreting a contract, this Court must first "ascertain and… give effect to the intent of the contracting parties." *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 465 (Tenn. 2012); *see also* *Roberts v. Bridges*, No. M2010-01356-COA-R3-CV, 2011 WL 1884614, at *6 (Tenn. Ct. App. May 17, 2011); *Cordova the Town Homeowners Ass'n v. Gill Dev. Co., Inc.*, No. W2007-01692-COA-R3-CV, 2008 WL 4253414, at *3 (Tenn. Ct. App. Sept. 12, 2008); *Maples Homeowners Ass'n*, 933 S.W.2d at 39. "[I]n reading the covenant we should give the words a fair and reasonable meaning in order to effectuate its purpose." *McDonald v. Chaffin*, 529 S.W.2d 54, 57 (Tenn. Ct. App. 1975). However, a court may not extend a contract "to cover circumstances not plainly included within [its] terms." *Richards v. Abbottsford Homeowners Ass'n*, 809 S.W.2d 193, 195 (Tenn. Ct. App. 1990); *e.g.*, *Williams v. Fox*, 219 S.W.3d 319, 324 (Tenn. 2007); *Turnley v. Garfinkel*, 362 S.W.2d 921, 923 (Tenn. 1962); *Beacon Hill Homeowners Ass'n v. Palmer Props.*, 911 S.W.2d 736, 739 (Tenn. Ct. App. 1995). This Court must "ascertain the intention of the parties as expressed by the language of the document itself… [in its] usual and ordinary meaning." *Grand Valley Lakes Prop. Owners Ass'n, Inc. v. Burrow*, 376 S.W.3d 66, 78 (Tenn. Ct. App. 2011). "[T]he search for the contracting parties' intent should focus on the four corners of the contract." *Realty Shop, Inc. v. RR Westminister Holding, Inc.*, 7 S.W.3d 581, 597 (Tenn. Ct. App. 1999). "A contract must be enforced according to the ordinary meaning of its words unless both parties understand and agree at the time of the contract that its meaning is otherwise." *Moore v. Moore*, 603 S.W.2d 736, 739 (Tenn. Ct. App. 1980). "All doubts concerning a covenant's applicability should be resolved against the covenant." *Richards v. Abbottsford Homeowners Ass'n*, 809 S.W.2d 193, 195 (Tenn. Ct. App. 1990).

The dispute between the parties rests on the interpretation of the word "constructing" in article IX, section I, of the CCR. Webster's II New College Dictionary defines "construct" as "to put together by assembling parts; build." Webster's II New College Dictionary 242 (1995). Appellant argues that the term "constructing" should be narrowly construed, because Moore itself is not a contractor, and, as such, it is not "constructing" homes on the lots. Moore, on the other hand, argues for a broader definition, contending that it is "causing homes to be constructed" by contracting with Mr. Peeper, a licensed contractor, for that purpose. Thus, Moore argues that it falls within the assessment exemption.

Although the trial court's order does not specifically state that it finds ambiguity in the disputed contract language, we may infer from the trial court's reliance on proof outside the four corners of the CCR that the trial court found the document to be ambiguous. Before a court may consider evidence outside the four corners of a contract, it must first determine whether the contract contains any ambiguity, and, if so, whether the ambiguity is patent or latent. In other words,

> [p]arol evidence is not admissible to remove a patent ambiguity but is admissible to remove a latent ambiguity. *White v. Kaminsky*, 196 Tenn. 180, 264 S.W.2d 813 (1954)….
>
> A patent ambiguity is one produced by the uncertainty, contradictoriness or deficiency of the language of an instrument, so that no discovery of facts or proof of declarations can restore the doubtful sense without adding ideas which the words do not sustain. A latent ambiguity is one where the equivocality of expression or obscurity of intention does not arise from the words themselves, but from the ambiguous state of extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by the mere development of extraneous facts without altering or adding to the written language or requiring more to be understood thereby than will fairly comport with the ordinary or legal sense of the words and phrases used. *Teague v. Sowder*, 121 Tenn. 132, 114 S.W. 484 (1908).

*Ward v. Berry & Assoc.*, 614 S.W.2d 372, 374 (Tenn. Ct. App. 1981). Furthermore, any ambiguity should be construed in favor of the non-drafting party, i.e., Appellee. *See, e.g.*, *Crye-Leike v. Carver*, 415 S.W.3d 808, 816 (Tenn. Ct. App. 2011) ("Tennessee courts adhere to the general rule that ambiguities in a contract are construed against the drafter"); *German v. Ford*, 300 S.W.3d 692, 704 (Tenn. Ct. App. 2009) ("doubtful language is construed against the party who drafted the contract"); *Ralph v. Pipkin*, 183 S.W.3d 362, 367 (Tenn. Ct. App. 2005) ("[w]e generally will construe ambiguous terms against the drafter"). Here, the word "constructing" is not so uncertain, contradictory, or deficient as to prevent an interpretation of the meaning of the contract. *Id.* Accordingly, we conclude that the trial court did not err in considering parol evidence in this case. "When a contract is determined to be ambiguous after application of the rules of construction, then the interpretation of the contract becomes a question of fact for the finder of fact." *Dog House Inv., LLC v. Teal Props., Inc.*, 448 S.W.3d 905, 913 (Tenn. Ct. App. 2014).

Turning to the evidence, Mr. Moore testified that he formed Moore & Associates to make a profit "from the building and selling" of "[h]omes to the public, as well as selling lots to those public [sic] who will promise to build a home." Mr. Moore's testimony regarding his intent to build multiple homes in the Greystone development was

corroborated by Cade Peeper, the licensed contractor, who constructed a home for Moore on lot #71. This proof contradicts Appellant's contention that Moore intended to only sell its lots unimproved.

Both parties proffered expert testimony from real-estate attorneys. Moore elicited testimony from attorney William Miller, who testified, in relevant part:

A. [I]n the second phrase, they're clearly setting out an exemption, as well, for someone who is purchasing a lot, who is not using it for their own purposes… It's distinguishing someone who buys a lot not for their own use as opposed to somebody, a potential home buyer, buy[s] a lot, build[s] a house and live[s] in the neighborhood.

* * *

A. But at the end of the day, Mr. Moore is not going to build a home in that neighborhood to live in. He's not going to occupy the property. He's simply going to be about the business of seeing that neighborhood gets built out, those lots get sold, that homes get built.

* * *

A. [S]pecifically, we're focusing on the language of the last clause of this paragraph, dues do not attach until the third party occupies the property, whether that's the builder who gives up on selling it and moves in or whether that's the person they were building it for in the first place. The house is finished, you get your certificate of authenticity and the ultimate homeowner moves in. That's when dues attach.

Appellant provided expert testimony from attorney Michael Hewgley, who stated that the covenant exempts only builders and contractors. Specifically, Mr. Hewgley testified:

A. [Mr. Moore] was -- he is not the intended class of builder that these documents intended to protect from payment of fees. He was not in the original builder group.

* * *

Q. Okay. Let's talk about the exemption, specifically. What class of people is that exemption, the builder's exemption, for lack of a better term, what class of people is that intended to protect?

A. Builders who normally build in Shelby County, Tennessee, for the sale to a third party that have a general contractor's license and have experience in building the subdivisions of this type.

\* \* \*

Q. Okay. What class of buyer would you say that Mr. Moore is?

A. He's a land – he's a lot speculator. He bought distressed lots in a distressed period for the purpose of selling them to the general public to make a profit.

Mr. Hewgley opined that, if a builder purchased a lot and constructed a house at the direction of a third-party, the builder would be "exempt for the period of time that he owned the lot," but if a future homeowner purchased the unimproved lot, and then the homeowner hired a builder to build a house on the lot, the homeowner would be required to pay assessments upon the purchase of the lot. However, Mr. Hewgley agreed that article IX, section I, does not use the term "builder." Further, Moore is not required to have a contractor's license to enter into an agreement with a licensed contractor to build homes on its lots, which homes Moore could then market for sale to the general public.

In regard to the intent of the CCR provision, it is undisputed that neither Mr. Miller nor Mr. Hewgley drafted the CCR. Accordingly, we question what, if any, probative value Messrs. Miller and Hewgley's respective testimony has concerning the intent of the CCR provisions in question here. Regardless, from the trial court's order, it is clear that the trial court found Mr. Moore's testimony credible regarding the purpose in buying the lots. In its order, the trial court states, "[b]ased upon the testimony of Charles X. Moore, the Court determines that Moore's purpose in purchasing the Subject Lots was for constructing single family residences for sale to the general public." "Where the trial judge has seen and heard the witnesses, especially if issues of credibility and weight to be given oral testimony are involved, considerable deference must be accorded those circumstances on review." *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995) (citing *Townsend v. State*, 826 S.W.2d 434, 437 (Tenn.1992)); *see, e.g.*, *Interstate Mech. Contractors, Inc. v. McIntosh*, 229 S.W. 674, 682 (Tenn. 2007) (finding that where "[t]he trial court had the opportunity to observe the demeanor and gauge the credibility" of the witness, "we may infer that the trial court found" that the witness' testimony was credible). By adopting Mr. Moore's testimony, the trial court found Mr. Moore's testimony to be probative as to Moore's intent in purchasing the lots. Further, from the plain language of the CCR, purchasing the lots from the developers for the purpose of constructing single-family homes for sale to the public is the only requirement to qualify for the assessment exemption in question. To interpret the CCR to require the third party to be a builder or hold a contractor's license to qualify for the exemption would be an extension of the terms of the CCR. We decline to adopt such interpretation. As noted by

Appellant's expert, Mr. Hewgley, the exemption provision in the CCR in this case is not a standard CCR provision, and this Court cannot interpret the provision to make it comply with standard provisions that protect only builders. Accordingly, we conclude that the trial court did not err in its determination that Moore is exempt, under article IX, section I, from paying the assessments.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's judgment. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellant, Greystone Homeowners Association, Inc., and its surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE